HINES, AGENT v. GREEN.

[87 South. 649, In Banc, No. 21567.]

1. MASTER AND SERVANT. *Assault on servant by another servant in course of employment actionable.*

Where a master employs a dangerous, quarrelsome, and vicious servant, or retains him in his service after knowledge of his dangerous character, and such servant, while in the course of his employment and in furtherance of the master's business, commits an assault on another servant, who is also employed in the master's business and is acting in furtherance of the master's business, the master is liable for the injuries resulting from the wrongful assault.

2. MASTER AND SERVANT. *Railroad engineer's assault on conductor held actionable.*

Where a conductor of a switching crew, including an engineer, was engaged in moving an engine and passenger cars from one point in the yard to another point therein, and where to complete the movement it is necessary to pass through a switch, and where the engine was halted because the switch was not thrown, and the engineer because of such fact assaults the conductor because the switch is not thrown, so that the engine may proceed to its destination, and where it was the conductor's duty to have the switch thrown, the engineer and the conductor are acting in the course of their employment, about the master's business, and the master is liable for a wrongful assault by the engineer on the conductor.

3. COMMERCE. *Rule for determining applicability of federal Employers' Liability Act stated; federal Employers' Liability Act held inapplicable to action for assault upon railroad employee by engineer.*

When applicability of the federal Employers' Liability Act (U. S. Comp. St., sections 8657-8665) is involved, or it is to be determined in a suit whether it is applicable or not, it may generally be determined by inquiring whether at the time of the injury, the employee was engaged in work so closely connected with interstate transportation as, practically, to be a part of it. The facts in this case do not bring it within this rule as the cars being switched neither carried interstate commerce nor were

they to be used immeddiately in interstate commerce, nor had they been used immediately before in such commerce, but were only used therein whenever the exigencies of the railroad called them into service for that purpose.

4. MASTER AND SERVANT. *Risk of railroad's negligence not assumed.* Under the laws of this state the servant does not assume the risk, in cases against railroad companies, where the master is negligent.

5. DEATH. *Verdict in excess of present cash value of expectancy under federal act reduced.*
   Where in a suit against a railroad company for an injury to a servant no case for punitive damages is made, and where the court instructs the jury that the rules applicable to the federal Employer's Liability Act (U. S. Comp. St., sections 8657-8665) governs the amount of damages, and where the verdict is in excess of the amount of the present cash value of that part of the expectancy which they could recover under such rule, but in fact the liability is governed by state law, the verdict will not be permitted to stand, unless a remittitur is entered, reducing the amount to such sum as could stand under such rule of liability.

APPEAL from circuit court of Forrest county.

HON. R. S. HALL, Judge.

Action by Mrs. Maud E. Green, as administratrix, against Walker D. Hines, agent. Judgment for plaintiff, and defendant appeals. Affirmed, with *remittitur.*

*Tally & Mayson* and *T. J. Wills,* for appellant.

The declaration in this cause states that the deceased, Jesse Green, was the engine foreman, charged by the master with the duty of controlling and directing the movement of the trains and the labor of the other employees, and to order, command and direct the workmen, that is, the engineer, fireman and switchmen on such trains.     It further charged that the engineer, Zack McLendon, was a quarrelsome, vicious and dangerous man with whom the said Jesse Green, as his superior in command, was placed to work.     That the cause of action accrued by reason of

the said Jesse Green being placed in control of the crew in which the engineer, Zack McLendon, was in charge of the engine and by reason of his quarrelsome and dangerous character, while engaged about their work, he, the said Mc-Lendon, shot and killed Green to the damage of the plaintiff.

A special plea in bar to the action was filed setting up that at the time of the injury and death of the said Jesse Green inflicted at the hands of Zack McLendon, that the said Jesse Green and Zack McLendon were engaged in interstate commerce, and that the defendant, the common master, at the same time was so engaged in interstate commerce with the said two employees above named. To this plea a demurrer was interposed. The demurrer admits that at the time of the death of the said Jesse Green that he and McLendon together with the common master, the defendant herein, were engaged in interstate commerce.

It is a well settled principle of law that a demurrer interposed will search the whole record and attach to and overthrow the first pleadings in point of time of filing, found to be defective.

(A) Stevens on Pleadings, page 144, states the rule to be:

"That on demurrer, the court will consider the whole record, and give judgment for the party who, on the whole appears to be entitled to it. Thus, on demurrer to the replication if the court think the replication bad, but perceive a substantial fault in the plea, they will give judgment, not for the defendant, but the plaintiff, provided the declaration be good; but if the declaration be also bad in substance, then upon the same principle, judgment would be given for the defendant."

(B) In Vol. 6, Enc. Pleadings and Practice, page 326, the rule is thus stated: "The principle that, upon demurrer, the court will consider only the fact of the pleadings against which the demurrer is directed applies only to the consideration of the sufficiency of the pleading demurred

to. While, therefore, the court is restricted to the particular pleadings for this purpose, the demurrer searches the whole record, and is taken as a demurrer to that pleading which contains the first fatal defect."

(C) In the case of *McGavock* v. *Whitfield,* 45 Miss. 452, Justice SIMRALL said: "It is a familiar rule in pleading that a demurrer brings into review the whole record, and should be applied to the first material defect in the pleadings."

(D) At whatever state of the pleadings a demurrer is interposed it reaches back in its effects through the whole record, and attaches ultimately to the first substantial defect in the pleading on whichever side it may have occurred. *Miles* v. *Myers,* Walker, 379; *Wren* v. *Spann,* 1 Howard, 115; *Tucker* v. *Hart,* 20 Miss. 458. See to the same effect, *Haynes* v. *Covington,* 9 Smedes & Marshall, 470; *Shoults* v. *Kemp,* 57 Miss. 218; *Prairie Lodge* v. *Smith,* 58 Miss. 301; *State* v. *Washington Steam Fire Co.,* 76 Miss. 449.

(E) It is not too late now to extend the demurrer back to the declaration if the declaration is defective in substance and fails to state a cause of action. *Y. & M. V. R. R. Co.* v. *Adams,* 77 Miss. 780.

We contend that casual inspection of the record will convince this court that the learned court below erred in admitting the testimony on behalf of the plaintiff over the objection of the defendant, for the reason that the said evidence was incompetent and should not have been admitted, as appears in the record herein on pages, 88, 91, 92, 93, 101, 126 to 130, 136, and 142 to 144, and that the admitting of this testimony was very prejudicial to the rights of the appellant, in the minds of the jury.

The second error assigned herein complains of the action of the court below in excluding evidence offered by the appellant and excluded by the court, as appears of record on pages 104, 177, 179, 190, and 199. This evidence was competent, was offered for the purpose of showing the situation and relation of the parties to each other and

the master, and should have been admitted. If admitted, manifestly it would have changed the result of the trial.

We most earnestly contend that the most serious error committed by the learned court below was in the action of the court in overruling appellant's motion at the close of the appellee's testimony, to exclude all the evidence offered on behalf of the appellee, plaintiff in the court below, and to peremptorily charge the jury to return a verdict for the appellant for the following reasons, to-wit:

First: The record in this case shows that McLendon was a fellow servant with the deceased Green. Green had the authority to direct the movements of the train, and to that extent directed the movements of McLendon. McLendon's employment and the scope of the duties assigned him was to run the engine as directed by Green. At the time of the difficulty, McLendon had gotten down off the engine, and thereby abandoned his post of duty and the work he was employed to do and engaged in a personal affair of his own. The record further shows that the deceased Green was not engaged in any duties that he was employed to perform. That both had abandoned their master's business and had engaged in the settlement of a personal difficulty between themselves. As neither employee was acting in the course of his employment, with the view to the master's business, the peremptory instruction should have been given. *Hinds* v. *Cole,* 85 So. 199; *Petroleum Iron Works* v. *Bailey,* No. 21384, 86 So. 644, decided at this term of court.

Neither of the employees having acted in the course of his employment toward the furtherance of his master's business, with the view to the promotion of the business of the master, the fellow servant rule applies. The master is not liable for the injury and death inflicted by one upon the other. *Petroleum Iron Works* v. *Bailey, supra,* and the cases cited therein.

Second: The uncontradicted evidence in this case shows that engineer McLendon and the deceased Green were engaged in and about the master's business prior to and up

until the time that they entered into the conflict, which resulted in Green's death, and that they were engaged in interstate commerce.

Under the Employers' Liability Act, the master is not liable for injuries wilfully inflicted by a servant upon a fellow servant. *Roebuck* v. *A. T. & S. F. R. R. Co.,* 99 Kan. 544, 162 Pac. 1153; *Hulley* v. *Moos Brougger,* 95 Atl. 1007; *L. & N. R. R. Co.* v. *Hudson,* 73 So. 30.

Third: Under the Federal Employers' Liability Act the employee assumes all the risk obvious to an ordinarily careful and prudent person. The uncontradicted evidence in this case shows that Green knew the habits and conduct of McLendon better than any other man. He worked with McLendon for a number of years, during which time they disagreed repeatedly.

He was then separated from McLendon by the master at his own request and given another run. After the contract had been entered into, which gave the employee the right of seniority, Green compelled appellant, over its objection and protest, to put him back on the run with McLendon after he had been separated from him eight months or more.

Green entering into the discharge of his duties with McLendon, with a full knowledge of his disposition, temperament, and character, assumed the risk of the dangers that such employment would entail. *Chesapeake & Ohio R. R. Co.* v. *John J. D'Alley,* 36 Sup. Ct. 564; *C. R. I. & P. R. R. Co.* v. *Ward,* 40 Sup. Ct. 275; See 5 Thompson, Corp., sec. 5443, p. 239.

The eleventh and twelfth assignments of error complains of the excessiveness of the judgment and the wrong measure given by the court in submitting the measure of damages to the jury. The amount of recovery in this case, if a recovery had been proper, must be based upon the proper measure by computation of the amount that the widow might reasonably be expected to receive from her husband for her support, and such sums as the children might reasonably be expected to receive from their father

for support during their minority. *McGovey's Guardian* v. *McGovery, Administratrix,* 173 S. W. 765; *N. C. & St. L. R. R. Co.* v. *Anderson,* 185 S. W. 678.

The amount shown by the mortality tables, computed on its present worth, was the maximum amount for which recovery could be had. This amount is shown to be sixteen thousand eight hundred sixty-four dollars and thirty-two cents. This is the proper measure to determine the amount of recovery in proper case for a recovery. *C. & O. R. R. Co.* v. *Gainey,* 36 U. S. Sup. Ct. 633; *C. & O. R. R. Co.* v. *Kelly,* 26 U. S. Sup. Ct. 630.

In conclusion, we most respectfully submit that on the whole record this was not a case to be submitted to the jury but one that should have been decided by the court, as the law was and is manifestly with the appellant and the court should have given the peremptory instruction requested, directing the jury to return a verdict for the defendant. For the reason assigned, the court should reverse the case and give judgment for appellant.

*J. W. Cassedy* and *Currie & Currie,* for appellee.

Green and McLendon, his slayer, were members of switching crew and not engaged in interstate commerce when Green was killed and therefore the rights of parties are governed by state law. Vol. 2, Roberts, Federal Liabilit of Comp., Section 503, accurately states the rule to be;

The ordinary and usual test in determining whether switching crews employed in railroad yards are engaged in interstate commerce is whether at the very moment of the accident they are assisting in moving interstate traffic, that is, cars either loaded or empty, originating in one state and destined to a place in another state, territory or foreign country. *Erie R. Co.* v. *Welsh,* 242 U. S. 303, 61 L. Ed. 319; *Seaboard Air Line Ry.* v. *Koennecke,* 239 U. S. 352, 60 L. Ed. 324; *Penn. Ry. Co.* v. *Donat,* 239 U. S. 50, 60 L. Ed. 139; *I. C. R. R. Co.* v. *Benhoms,* 233 U.

S. 473, 58 L. Ed. 1051; *Clarke* v. *Erie R. R.,* 230 Fed. 479; *A. G. S. R. R. Co.* v. *Skotzy,* 71 So. 335.

We quote the authorities for the purpose of showing that the rights of appellant and appellee are not governed or controlled by the Federal Employers' Liability Act, and the amendment thereto.

III (2). Burden of proving interstate employment upon the defendant. 1 Roberts, Injuries to Interstate Employees, sec. 466, page 808; *Chicago B. & Q. R. R.* v. *Harrington,* 241 U. S. 177; *Dell Lack & West R. R.* v. *Yurkonis,* 238 U. S. 439; *Shanks* v. *Del. Lack. & West R. R.,* 239 U. S. 556; *Minneapolis & St. Paul R. R. Co.* v. *Winters,* 242 U. S. 353. Fellow Servant rule abolished under Federal Employer's Liability Act.

Prior to the enactment by Congress of the Federal Employer's Liability Act the laws of the several states were regarded as determinative of the liability of employers engaged in interstate commerce for injuries received by their employees while engaged in such commerce. So, if we are mistaken as to which of the laws, state or federal, should control in the final determination of this case, we respectfully submit the difference in permitting recovery is of minor importance, and under the state or federal law this case should be affirmed on the law and the facts disclosed in the record.

Section 1 of the federal employer's Liability Act provides that a recovery for the death may be had if such death resulted in whole or in part from the negligence of any of the officers, agents or employees of such carrier. This section therefore abolishes the fellow servant rule. 1 Roberts, Federal Liabilities of Carriers, section 428, page 736.

V. Fellow Servant Rule abolished in this state. Section 4056, Code of 1906, section 6684, Hemingway's Code.

VI. Contributory negligence no bar to action. Laws of 1910, chapter 135, in effect April 16, 1810, section 502, Hemingway's Code.

VII. Assumption of risk. Where master is negligent. Abolished. Laws of 1914, chapter 156, in effect January 28, 1914, section 504, Hemingway's Code, is as follows: "In all actions for personal injury to an employee, and in all actions where such injury results in death, such employee shall not be held to have assumed the risks of his employment in any case where such injury or death results in whole or in part from the negligence of the master.

IX. Very slight difference in right to recover under the state or the federal law. We submit, that under the facts of this case the rights of the litigants are governed and controlled by the law of the state rather than the law of the Nation. However, the only difference in the two is that under the law of the state the assumption of risk is abolished where the master is negligent, and under the law of the Nation the assumption of risk is not abolished where the servant has actual constructive knowledge of the master's negligence and appreciates the dangers necessarily incident thereto and voluntarily enters or continues in the employment of the master. *Y. & M. V. R. R.* v. *Dees,* 121 Miss. 439, 83 So. 613; *Railroad Company* v. *Horton,* 233 U. S. 492; *Railroad Co.* v. *Hall,* 232 U. S. 94; *McGovern* v. *Ry. Company,* 235 U. S. 389.

X. Appellant negligent in two respects. We submit, that the facts show and the jury found, the appellant was negligent in two respects: (A) In the employing and retaining the said McLendon in its service when it knew or should have known that he was a notoriously vicious, dangerous and unfit servant to place to work with other servants and employees.

(B) The said McLendon, for whose acts the appellant is liable, negligently and unlawfully assaulted and killed the decedent, while he and McLendon were acting within the view of furthering their master's business in moving and handling said engine and cars and the switch in question.

XII. Appellant's rule that certain employees should be removed. It violated this rule. Appellant recognized that it was its duty to select employees possessing mental, moral, and physical qualifications and to see that no man of bad character, vicious or reckless habits and disposition, should be retained or kept in its employment. It had the following rule: "Employees who are dishonest, immoral, quarrelsome, or otherwise vicious will not be retained in the service."

This rule was breached by appellant in retaining McLendon and placing him to work with the decedent and others. It is argued that decedent selected his position with appellant. This is a mistake. He was doing what he had a right to do under his contract and under the rules and regulations of appellant. He had a right to assume that suitable and competent fellow employees would be placed with him to perform his work. This was not done. This was negligence, a result of which was that decedent lost his life.

This court in the recent case of *Walker D. Hines Director General* v. *Cole,* 85 So. 199, held: "The rule at common law is that a master is not responsible to a servant for an injury sustained by him because of the negligence of another servant while both are engaged in the same service, with this exception, that a master who negligently or knowingly employs or retains in his service an incompetent servant is liable for injuries to a fellow servant, through the incompetency of the servant so employed and retained, unless the injured servant has assumed the risks incident to such incompetency." *Railroad Company* v. *Ward,* 173 Pac. 212; *Dickinson* v. *Granberry,* 174 Pac. 776; *Railroad Company* v. *Davern,* 177 Pac. 909; *Gila R. R. Co.* v. *Hall,* 232 U. S. 94, 58 L. Ed. 521. It will be observed that the assumption of risk was fully covered by the instructions in this case as applicable to the facts.

The court will remember that the fellow-servant rule does not apply in this case. These employees were admittedly engaged in the operation of a train. The fellow-

servant rule is abolished as to them, and the master is responsible for any injury wrongfully inflicted by one servant on another when acting within the course of his employment with a view of the master's business, although the master was not negligent in employing such servant or retaining him in his service. *Cole case, supra.*

Counsel cite the Cole case in support of their contention. We submit, this case establishes appellee's right to recover. The appellee did not assume the risk of being negligently and wilfully assaulted by McLendon while acting in and about the master's business, and in the furtherance thereof, in operating said train.

Could it be seriously contended that if the engineer of this train had willfully, and with gross negligence, run the engine over the decedent and killed him because he had not opened the switch, that the appellant would not have been liable. This court has held that even in the case of a trespasser or a licensee, that an employee can not wilfully, wantonly or negligently kill or injure a trespasser or licensee. *Barmore* v. *V. S. & P. Ry. Co.,* 85 Miss. 440; *Barmore* v. *V. S. & P. Ry Co., supra;* 1 Shear & Red., Negligence, sec. 146. And the master cannot escape liability, even though the acts of the servants were unauthorized, wilful, and wrongful. Id. sec. 150; Thompson, Negligence, secs. 518, 519.

The court *in Banc* in *Indianola Cotton Oil Company* v. *Crowley,* 121 Miss. 263, held: "Where the general manager of a plant told a bookkeeper to leave the books and accounts with him for inspection and when the bookkeeper hesitated to do so, assaulted him, in such case the general manager was acting within the scope of his employment and about his master's business and the master was liable for his acts, though he desired to inspect his individual account with the master.

The court in this case reaffirms its announcement in the *Barmore case, supra. Yazoo & Mississippi Valley R. R. Co.* v. *Hare,* 104 Miss. 564; *Richberger* v. *Express Co.,* 73 Miss. 171; *Whitaker* v. *R. R.,* 160 S. W. 1009; 2 Me-

chem on Agency (2 Ed.), sec. 1929; section 1957, of Mechem on Agency; *M. K. & T. Ry. Co.* v. *Day,* 136 S. W. 435; *Booth* v. *White Engineering Co.,* 86 S. E. 32; *L. & N. R. R. Co.* v. *Hudson,* 73 S. E. 30.

XIII. McLendon was a reckless, grossly negligent and incompetent servant, and the court properly permitted evidence to explain his reputation. *Vicksburg & Jackson R. R. Co.* v. *Patton,* 31 Miss. 194; *Magourik* v. *Telegraph Co.,* 79 Miss. 636; *Railroad Co.* v. *Hicks,* 91 Miss. 354; *Railroad Company* v. *Hare,* 61 So. 648; *Barmore* v. *Railroad Co.,* 85 Miss. 440; *Hines* v. *Cole,* 85 So. 199; *Petroleum Iron Works* v. *Bailey,* 86 So. 644.

XIV. Appellee Liable Under Federal Law. In *Erie R. R. Co.* v. *Purcker,* 244 U. S. 320, the United States supreme court held: "Under the Federal Employers' Liability Act, an employee does not assume a risk attributable to the negligence of his co-employees until he is aware of it, unless the risk is so obvious that an ordinarily prudent person in his situation would observe and appreciate it. *Chicago, Rock Island & Pacific R. R. Co.* v. *Ward,* 252 U. S. 18.

The question of assumption of risk, even under the Federal Act, was one for the jury. *Yazoo & Mississippi Valley R. R. Co.* v. *Dees,* 121 Miss. 464; *Railroad Co.* v. *Horton,* 233 U. S. 492. As the federal act does not apply, however, there is no question of the assumption of risk under our state statute, the jury having found on the facts that defendant and its servant were negligent.

The *Roebuck case,* 162 Pac. 1153, from the Kansas supreme court, is relied on by counsel. This case is not applicable to the case at bar. The Roebuck case was brought under the Federal Employer's Liability Act and the assault was not committed, within the scope of Mexican employment. It was not committed while he and his fellow employee were in the prosecution of the master's business in furtherance of their employment.

The decedent in the case at bar was negligently and wilfully assaulted in furtherance of his master's business.

Not so in the Roebuck case. The *Hulley Case*, 95 Atl. 1007, was governed and controlled by the Workmen's Compensation Act of New Jersey and is not applicable to the case at bar.

XVI. Verdict Not Excessive. The verdict is large but the loss is great. The loss of their young husband and father with his splendid earning capacity and support, justifies a large verdict. Verdicts for much larger sums have been permitted to stand for death claims. In *Brickman* v. *Southern Ry. Co.*, 54 S. E. 553, the supreme court of South Carolina allowed a verdict for forty-four thousand dollars for the loss of two legs. In *Beard* v. *A. & V. Ry. Co.*, ——So. Rep. ——, this court permitted a verdict to stand for twenty-five thousand dollars for the loss of one hand. Other large verdicts, where the injuries and losses were great have been permitted to stand. We therefore earnestly insist that this award is not too large and should be permitted to stand.

XVII. We therefore respectfully submit: 1. That the state law rather than the Federal Act controls the law and the facts of this case, as the employees were engaged in intrastate commerce at the time when and the place where decedent was killed.

2. That appellant was guilty of negligence in violating it rules and retaining said McLendon in its service in violation of said rules, when it knew that he was a desperate character and a grossly negligent and reckless man and unfit to associate with diligent, careful and faithful employees.

3. That as a result of retaining McLendon in its service the decedent was negligently and wantonly killed to the great loss and detriment to his wife and children.

4. That appellant was negligent in furnishing decedent with unfit fellow servant and under the law of this state the decedent did not assume the risk of the negligent and wanton acts of McLendon at whose hands the decedent met his death.

5. That the Federal Employers' Liability Act does not apply in this case and if so under this act it was a question of facts as to whether the decedent assumed the risk of the acts of McLendon from which the decedent died, and as this question of fact was decided in appellee's favor this question is foreclosed under the decisions of this court and the supreme court of the United States.

6. That appellant received more at the hands of the court below than it was entitled to receive in the instructions given and therefore it cannot now justly or legitimately complain.

We, therefore, earnestly and respectfully submit, that this case should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

Mrs. Maud E. Green, the appellee, brought suit against the appellant in the circuit court for the death of her husband, an employee of the appellant, his death being brought about by an engineer in the service of the appellant killing the appellee's husband at a time when the engineer and the deceased were employed by the appellant and engaged in moving some passenger cars from one point in the yards in Hattiesburg to another point in the yards. The original declaration was filed in three counts, alleging that the engineer was an unsafe and dangerous man to be employed and with whom to work, on account of his quarrelsome, dangerous, and vicious habits and character, which were known to, or by the exercise of reasonable diligence ought to have been known to, the appellant.

The appellant defended under the general issue, and filed certain special pleas. Among other pleas, it pleaded that the deceased and the engineer were at the time of the killing engaged in interstate commerce for the appellant, and that the liability of the appellant was covered by the federal Employers' Liability Act (U. S. Comp. St., sections 8657-8665), and that under this act there was no liability upon the appellant for the death of the appellee's

intestate. When this plea was filed by the defendant a
new suit was filed by the appellee as administratrix under
the federal Employers' Liability Act, in which the acts
alleged in the other suit were declared on, and it was al-
leged that at the time of the injury the deceased and the
engineer were engaged in the business of the master and
in furtherance of the master's business, bringing the case
under the federal Employers' Liability Act, and then, up-
on motion of the appellee, the two suits were consolidated
by the circuit court without objection, and the case pro-
ceeded to judgment, resulting in a verdict and judgment of
thirty-five thousand dollars in favor of the appellee as ad-
ministratrix.

On the trial it appeared that the deceased was a con-
ductor of a switching crew operating in the yards at Hat-
tiesburg, Miss., and that the engineer was the engineer in
charge of the cars being moved from one point in the yard
to another point. While the movement was being made
the switchman who accompanied the crew gave the engi-
neer a signal, which he repeated several times, and the en-
gineer had told the switchman not to signal him but once,
that he was on the watch, and would see the signal, and
when the switchman signaled more than once on this occa-
sion and remounted the running board on the engine the
engineer came down with a hammer and accosted the
switchman about disobeying his admonition or instruction
about the signal. The switchman, who was a negro, told
the engineer that he was doing his duty as best he could
under the instructions of Mr. Green, the deceased, who
was the foreman of the crew. Whereupon the engineer
told the switchman that he would kill him and Mr. Green
too, and knocked the switchman off the running board
with the hammer. This resulted in certain of the crew
being taken from the train to carry the switchman to the
hospital. The engineer moved on to the switch, which lay
along his route, and when he reached the switch it had not
been thrown so as to permit him to proceed, and he stop-
ped the engine, and Mr. Green, the conductor, and fore-

man proceeded from the cars being moved to the switch to throw the switch, it being his duty to do so in case the switchman was not available for that service. While he proceeded from the cars to the switch McLendon, the engineer, came down from the engine with a pistol and took his stand near the front of the engine, and, as Green, the conductor, and foreman, came up, accosted him with the remark, "Why in the hell have you not thrown the switch?" The only person who was produced at the trial who heard this remark was engaged in working on some cars near the point and passed around the car in his work, and a few moments heard a pistol shot. There were two or three shots fired, and when the first shot was fired other persons saw McLendon, the engineer, but did not see the deceased. McLendon refused to let any one approach the body of the deceased until he had taken an iron pin and placed it near the man and had sent for a policeman to come to the scene.

It was in proof that some years before the killing in question the deceased and McLendon had worked together, and that they did not get along, having personal difficulties about the work. The railroad company on the application of the deceased, Green, had changed him from a day crew to a night crew, and they worked separately until some eight or nine months before the killing. Prior to the killing some eight or nine months there had been a strike and in the settlement of the strike between the employees and the railroad company and separate contracts had been entered into under which the railroad company had agreed that the different brotherhoods under which its employees were organized, McLendon being a member of the Brotherhood of Engineers, and the deceased, Green, being a member of the conductor's organization, which contracts gave the employees the right to select positions in the service according to the rule of seniority; that is to say, the man who had been longest in service of the railroad company had the first right to select his service, and those who had been in the service a less time having

to select from the positions available after their seniors
had selected employment. After this contract was execu-
ted, Green, the deceased, applied to the railroad company
for work during daylight, that being more desirable than
the night work. At first the railroad company had de-
clined or failed to give him the promotion, but was ap-
proached by the manager of the conductor's organization,
and told that Green had a right under his contract to
select the position. The railroad company told Green that
if he would arrange with the man in charge theretofore of
the daylight work to change positions it would be all right,
and the change was accordingly made. When the change
was made it threw Green into the crew in which McLen-
don, the engineer, was working in the switching operations
in the yard. The railroad company set forth by plea that
Green had assumed the risk of working with McLendon
by virtue of his claiming his rights under the contract, and
that his administratrix could not recover because of that
fact under the federal Employers' Liability Act. The
pleadings made an issue on this proposition, and the case
was submitted to the jury on instructions as to the rights
of the parties bearing on the assumption of the risk, in
effect telling the jury that if Green knew of McLendon's
character and placed himself in association with McLen-
don with knowledge thereof under his contract with the
railroad company, he had assumed the risk incident to
working with such a dangerous man, and submitting the
counter proposition that if he did not know that McLen-
don was a dangerous man with whom to work he would
not assume the risk.

It appears from the evidence for the plaintiff that Mc-
Lendon was a contentious, disagreeable, and quarrelsome
man; that he was constantly embroiled with his fellow
employees in quarrels about the work; that he would not
obey the signals, and that he was a stickler for the rules;
that he frequently had quarrels, and had habitually
carried a pistol, either on the engine seat or upon his per-
son; and that he had been frequently reported to the rail-

road company. It also appeared in evidence that Green had reported him for violating his duties on a number of occasions. It was also in testimony for the plaintiff that he , the engineer, had several times tried to catch Green between the cars and then move his engine so as to injure him. It was also in proof that he had killed a man prior to the killing of Green about some matter disconnected with the railroad business, and that the employees of the yard regarded him as a turbulent, dangerous, and violent man, and also that he had the general reputation in the community of being a dangerous, quarrelsome, and violent man.

The first question, and the most important question to be decided in this suit, is whether or not the killing grew out of the master's business while the two men were employed about the master's business and in furtherance of the master's business, and whether the master is liable for the death of one of its employees at the hands of another employee when not caused by the movement of the cars or physical appliances of the master, but caused by a weapon as in the present case.

The appellant relies principally upon the case of *Hines, Director General,* v. *Cole,* 85 So. 199, in which case this court held that the employees in that case were not in furtherance of the master's business, and that the quarrel in that case was the private quarrel of the parties involved in that difficulty. The character of the employee for peace and violence was bad, as here. The rule as stated in the syllabus is as follows:

"The master is not liable for the wrongful assault by one servant on another, unless the servant in making the assault was acting within the course of his employment, with a view to his master's business."

The converse of the rule is true, that if the assault is made while acting within the course of his employment and with a view to his master's business, the master is liable, especially where he has knowledge that the servant has such a character for violence or has such a vicious dis-

position as to make the assault probable. Under the Cole Case it is held that when the fellow-servant rule does not apply the master is responsible for an injury wrongfully inflicted by one servant on another acting within the course of his employment with a view to his master's business, although the master was not negligent in employing such servant, or in retaining him in his service.

In the present case there is ample proof that the master had knowledge of the vicious disposition and violent character of the engineer who committed the assault in this case as to make him liable regardless of the rule above stated, provided, of course, that the servant was acting within the scope of his employment and with a view to his master's business. We think the rule in this state and the rule in the federal court is the same as to this proposition, and it would be immaterial which law governed so far as this feature of the case is concerned, provided the engineer was acting within the scope of his employment and with a view to his master's business. Do the facts of this case show that the engineer and the deceased were so acting in the course of their respective employments, and with a view to the furtherance of the master's business? They were engaged in moving the master's cars and machinery from one point of the yard to another point of the yard. In order to carry the car to its destination it was necessary to pass through the switch about which the difficulty arose, and it was the fact that the switch had not been thrown and the track cleared so that the engineer could proceed to his destination that he accosted, assaulted, and killed the deceased. It was no private quarrel, but was a quarrel about the master's business, and it was because the engineer was delayed and hindered in proceeding to his destination that he was irritated, caused him to quarrel, make the assault, and kill the deceased. It was the deceased's business to throw the switch under the circumstances that confronted the crew at the particular time, and it was his business, and he had authority to control the movement of the trains; but it was the engineer's duty

to move the train, and we think it was within the scope of his power and duty to call for an explanation, where one was reasonably required as to why the switch was not thrown or as to why the track was not cleared so he could proceed to his destination. So far as the question as to whether the two men were engaged in the master's business, about the master's business, and whether the quarrel occurred and the killing resulted from this relation, the evidence amply sustains the plaintiff's contentions as to liability on this feature of the case.

Up to this point the state and federal laws, we think, are in harmony, but questions now arise in which the rule in the two jurisdictions differs. Under the federal Employers' Liability Act the doctrine of the assumption of the risk applies where the servant injured knew and appreciated the risk and voluntarily continued in the employment after such knowledge without promise on the part of the master to remedy the condition; while under the state law, if the master is negligent, the servant does not assume the risk. There is also a difference in the elements for which damages may be allowed in the two jurisdictions. Under the state law the plaintiff will be entitled to recover the net present cash value of the expectancy, and also would be allowed to recover for damages from the loss of association, counsel, consortium, etc. While under the federal Employers' Liability Act the plaintiff would be limited to the monetary value, or the present value of the amount of money, they would have received for support, gifts, etc., had the deceased lived, and would not be entitled to recover for such parts of the value of the expectancy as the deceased himself would have earned, but would not have turned over to the family, and they would not be entitled to damages for loss of society, counsel, or consortium.

The defendant by proper pleadings and by proof tending to sustain its pleadings raised the issue of the assumption of risk in working with the engineer, and the trial court peremptorily instructed the jury for the defendant

that the federal Employers' Liability Act controlled the case, and the elements of damage involved under that law was all that was submitted to the jury for consideration, and the verdict exceeds the amount of the present value of the expectancy of the deceased. The plaintiff contended in the court below that the liability was given by the state law, and contends in this court that this is true.

In view of the difference in the rule under the state law and the rule under the federal law, it is important to determine which law governs the transaction. The switching movement in the yard which was being done at the time of the killing was a movement of certain passenger cars and a coal loader and a gong. The coal loader was being carried to the shops for repair, and was not in use by the railroad company immediately preceding the movement, nor was it placed back in the service of loading cars for several days thereafter. The passenger cars had not been used in service on the day of the injury in any movement or in any operation for the railroad company, nor were they being carried to be cleaned for immediate use, but were in fact placed in the service of the railroad company the day following the injury. These passenger coaches were used both for intrastate commerce and for interstate commerce as the needs of the railroad company called them into service. The injury occurred in the forenoon, and there was no purpose to use these cars during the day of the injury, nor was there any fixed or settled purpose to use them in such service at any particular time. Their use, or whether they would be used or not, depended entirely upon the circumstances which might arise, and were not controlled by any circumstances then existing, nor was there any settled purpose to use them at any particular time. They were merely used when the needs of the railroad company required their use.

The United States supreme court has laid down the test for determining whether the federal Employers' Liability Act was applicable in the following language:

"Generally, when applicability of the federal Employers' Liability Act is uncertain, the character of the employment, in relation to commerce, may be adequately tested by inquiring whether, at the time of the injury, the employee was engaged in work so closely connected with interstate transportation as practically to be a part of it." *Southern Pac. Co.* v. *Industrial Accident Commission*, 251 U. S. 259, 263, 40 Sup. Ct. 130, 131 (64 L. Ed. 258) ; *Pedersen* v. *Delaware, L. & W. R. Co.*, 229 U. S. 146, 151, 33 Sup. Ct. 648, 57 L. Ed. 1125, 1127, Ann. Cas. 1914C, 153, 3 N. C. C. A. 779; *Shanks* v. *Delaware, L. & W. R. Co.*, 239 U. S. 556, 36 Sup. Ct. 188, 60 L. Ed. 436, 438, L. R. A. 1916C, 797; *New York C. R. Co.* v. *Porter*, 249 U. S. 168, 39 Sup. Ct. 188, 63 L. Ed. 536; *Kinzell* v. *Chicago, M. & St. P. R. Co.*, 250 U. S. 130, 133, 39 Sup. Ct. 412, 63 L. Ed. 893, 896.

Measured by this test, the facts do not bring the case within the federal Employers' Liability Act, for the reason that none of the things being operated and moved at the time of the injury were being then used in interstate commerce, nor were they intended to be so used immediately upon being placed in condition for use, nor was there any fixed time or purpose for their early use so as to make them so intimately connected with interstate commerce as to be practically a part thereof.

There are a number of assignments of error as to instructions complained of by the appellant, but the errors, if any, are favorable to the appellant, and require more facts to be found to render liability against the appellant than the law required.

There is one assignment of error, however, that is serious, and that is that the verdict is excessive. The trial proceeded, as above stated, on the theory that the plaintiff was limited to elements of damage recognized by the federal Employers' Liability Act, and as the jury only had these elements submitted for its consideration, the verdict is excessive, and it cannot be upheld upon any theory that the jury might have found elements of damage, if properly

125 Miss—32

instructed, which might be sustained under the elements recognized by the state law. There is no theory or contention in the record or in the arguments for the allowance of punitive damages. The expectancy of the deceased was twenty-nine and sixty-two hundredths years, and he was a healthy man both in mind and body, and was earning five dollars per day. This would amount to one thousand eight hundred and twenty-five dollars per year. The evidence does not contain any calculation of the expectancy, nor are any tables introduced by which computation may be made according to any standard, recognized mortality tables. But, finding the present value by dividing the total expectancy, if earned, by one plus six per cent, the legal rate of interest, for the average number of years of the expectancy, which in the absence of other proof we will apply in this case, we find that the gross net value is approximately twenty-four thousand dollars, from which must be deducted the expenses that would have been incurred by the deceased on his own account in living and supporting himself during the period of his expectancy, which would doubtless have amounted to at least fifty dollars per month, and we think that the highest verdict that could be upheld on the elements of damage involved in the trial would be sixteen thousand dollars.

If the plaintiff will remit all of the judgment in excess of sixteen thousand dollars, the judgment will be affirmed; otherwise it will be reversed and remanded because of the excessive verdict.

*Affirmed, with remittitur.*

W. H. Cook and Holden, JJ., being disqualified, took no part in the decision of this case.