## GREAT SOUTHERN LUMBER CO. *v.* MAY.[*]

(Division B. Feb. 23, 1925. Suggestion of Error Overruled April 6, 1925.)

[102 So. 854. No. 24664.]

MASTER AND SERVANT. *Master's liability for assault by servant on another servant stated.*

A master is not liable for the assault of one servant upon another unless he is negligent in employing or retaining, after knowledge of his vicious character, a servant of vicious, quarrelsome, and

dangerous disposition, unless such person making the assault is placed in the master's position with authority in respect to the person assaulted. To impose liability there must be negligence on the part of the master, or breach of some duty owed to the person assaulted, and the assault must have been in the further-ance of the master's business and within the scope of the employ-ment.

*Headnote.   Master and Servant, 26 Cyc., p. 1306 (1926 Anno.).

### ON SUGGESTION OF ERROR.

MASTER AND SERVANT. *Fellow servant rule not abrogated as to servants dismantling skidder, where one assaults another; master free from negligence not liable for assault by fellow servant.*

The fellow servant rule is not abrogated by section 6684, Heming-way's Code (Laws of 1908, chapter 194), as to servants of a com-mon employer engaged in the same business under a common master, where the employees at the time of the injury are en-gaged in dismantling a skidder; the skidder not being operated at the time of the injury, and the injury being caused by an as-sault of one servant upon another. The master is not liable for such assault, where the evidence shows he was not negligent in employing, or retaining after employment, with knowledge that such servant was vicious and dangerous.

*Headnote. Master and Servant, 26 Cyc., pp. 1306, 1375 (1926 Anno.).

APPEAL from circuit court of Lawrence county.
HON. J. Q. LANGSTON, Judge.

Action by John May against the Great Southern Lumber Company. From judgment for plaintiff, defend-ant appeals. Reversed and rendered.

*Brady & Dean,* for appellant.

Appellant submits but one question to this court and that is that it was entitled to a peremptory instruction and that the judgment of the court below should be reversed and a judgment entered in this court for the reason that the appellee and Percy Talley, who were both employees of the appellant, were not acting in the course of their employment and with a view to their master's business.

The record shows the controversy arose over a hanger. That the appellant's employee, Percy Talley, had moved a hanger from the right side of the skidder to the left side of the skidder. That the appellee, who was a fellow servant of Percy Talley, discovered that the hanger had been moved. He ascertained in advance who moved it but, nevertheless, proceeded to leave his place of work because as he stated he wanted the hanger, although he did not need it at that time, and go over to the opposite side of the skidder and demand to know who had moved the hanger. He did not look for the hanger or undertake to use it or secure possession of it. He made a simple demand to know who moved it. The controversy which arose was not on account of an effort to secure the possession of the hanger.

Appellee and his fellow servant, Talley, were not acting within the course of their employment and with a view to the master's business but it was a personal controversy caused by the fact that the appellee was irritated on account of the moving of the hanger.

The master, the appellant was not interested in which one of its two servants had the hanger. The hanger was provided for the convenience of its negro employees who had to load the timbers either on the car or on the hangers. A hanger had just been lost by its employees and one was, therefore, missing. It was not interested in the question as to which of its employees should have the convenience of the identical hanger.

This court in the case of *Hines, Director General* v. *Cole,* 85 So. 199, stated that, "The master is not liable for the wrongful assault by one servant on another, unless the servant in making the assault was acting within the course of his employment and with a view to his master's business."

In the case of *Director General* v. *Green,* 87 So. 649, this court quoted from the opinion in the Cole case. Appellant is willing to predicate its right to a judgment in this court upon the doctrine laid down in the Green case.

It cannot be thought for a minute that an assault made in reply to a civil question would further the master's interest or that such an assault was with a view to the master's business or within the course of employment of Talley when the master's interest would have been as well furthered or protected by the hanger being in the possession of Talley as in the possession of May or *vice versa.*

In the Cole case hereinabove cited wherein the foreman in charge of the wood work of the appellant assaulted the foreman in charge of the metal work who was tearing up the wood -work, this court stated that the counsel representing Cole, who was the appellee, "do not and could not successfully contend that when Cannon assaulted the appellee he was acting within the course of his employment and with a view to his master's business."

This court then proceeded to hold that there was no liability, as appellee's counsel contended, on account of the employment by the appellant of a violent and dangerous man. This court stated that conceding for the sake of argument that Cannon was a violent and dangerous character and that he wrongfully assaulted Cole, there was, nevertheless, no liability because "Cannon was not acting in the course of his employment or with a view to his master's business," and cited as authority for its position the following authorities: 2 Cyc. 1539; 20 Am. & Eng. Encyc. Law (2 Ed.), 171; 18 R. C. L. 807; 6 Labatt on Master and Servant (2 Ed.), par. 2347; *Richberger* v. *Express Co.,* 73 Miss. 161, 18 So. 922, 31 L. R. A. 390, 55 Am. St. Rep. 522; *Railway Co.* v. *Harz,* 88 Miss. 681, 42 So. 201; *Railway Co.* v. *McAfee,* 71 Miss. 70, 14 So. 260; *Railway Co.* v. *Latham,* 72 Miss. 35, 16 So. 757; *Railroad Co.* v. *Hare,* 104 Miss. 564, 61 So. 648.

In the case now presented to this court there is no contention made that Talley was a violent and dangerous character. No pretense was made that he is not a peaceable and quiet person. The appellee was a fellow servant of Talley. The fellow-servant doctrine was in full

force and effect, since his injury was not suffered in such manner as to enable him to invoke section 6684, Hemingway's Code, abolishing the fellow-servant rule; and to hold to the contrary would violate the Fourteenth Amendment to the Constitution of the United States and deprive the appellant of its property without due process of law and, also, deny it the equal protection of the law. But, conceding that the fellow-servant rule had been abolished and was not in force and effect and that Talley and the appellee were of equal rank, which was hardly the case since Talley was only an extra drum man while May was a regular drum man, then the fact still remains that when Talley assaulted May he was not acting within the course of his employment and with a view to his master's business.

The doctrine laid down in the Cole case was reaffirmed in the Green case herein above cited. Upon this doctrine the appellant in this case is willing to stand.

In the Green case as in the Cole case the question presented was not merely one of wrongful assault but it involved, also, the further question in both cases and especially in the Green case of the turbulent, dangerous and violent character of the man who made the assault. It is not contended in this case that Talley was in any sense a dangerous, quarrelsome or a violent man. No proof of this kind was offered and the whole question, therefore, presented is: Was he engaged in the course of his employment and with a view to his master's business?

In the Green case this court stated that McClendon was acting in the course of his employment and with a view to his master's business because the quarrel arose over the failure of Green to throw a switch, which it was his duty to throw and over which it was the duty of McClendon to operate the locomotive of which he was engineer. In other words, it was his duty to move the locomotive which he was operating over the switch. He had a right to have the switch thrown so he could move over it. He had a right to accost the conductor about

not throwing it and when a difficulty arose over the failure of the conductor to throw the switch so as to enable McClendon to move the locomotive of which he was engineer over the switch he was acting within the course of his employment and in insisting that the switch be thrown he was acting with a view to his master's business because it was necessary that the switch be thrown and it was necessary that McClendon move the locomotive which he was operating over the switch, otherwise the master's business would suffer.

The assault made by Talley on May in response to the civil question, "Who of you boys got my hanger?" was not in the course of his employment, was not with a view to his master's business and was not done to further the master's business but in the language of the supreme court of the United States was "a wanton and willful act done to satisfy the temper or spite of" appellant's employee, Talley. See *James C. Davis, Director General,* v. *Mrs. Maude Green, Admx.,* 67 L. Ed. 229.

Appellant most respectfully insists that this case should be reversed and a judgment entered herein for the appellant for the reason that an assault was not committed upon the appellee by an employee of the appellant who was acting within the course of his employment and with a view to his master's business.

*G. Wood Magee* and *Geo. N. Magee,* for appellee.

The fellow-servant rule as to employees of railroads, etc., is abrogated by statute in this state, section 6484, Hemingway's Code, and the rule does not apply in the instant case. *Ellis* v. *Bear Creek Mills Co.,* 117 Miss. 742. Counsel for appellant says that he is willing to stand on the doctrine laid down in the *Green case,* 125 Miss. 476. So are we.

The Green case was carried to the supreme court of the United States, 67 L. Ed. 299, but the disposition of the case by that court in no wise abrogated or changed the

law as announced by this court in construing the law of this state. In passing upon the case the supreme court of the United States observed: "Whatever may be the law of Mississippi, a railroad company is not liable for such an act under the statutes of the United States." The court was passing upon a statute of the United States. We must submit that the case at bar is very similar in its controlling facts to the Green case.

The hangers did not belong to May or to Talley; they belonged to the appellant. The whole works—skidder, hangers and all—belonged to the appellant. Each of these men, May and Talley, was required to take care of and not lose the hangers furnished them by the appellant. It was quite reasonable, therefore, for May to inquire about the hanger belonging to him when he found it missing, and being informed that Talley had taken it, it was necessary for him to ask about it.

When May went around on Talley's side of the skidder and inquired about the hanger he assuredly was discharging a duty he owed the master and was acting in the course of his employment and in the furtherance of his employer's business. A corporation can act only by and through agents and employees. So, it was the master asking Talley about the hanger and it was the master striking May with the cudgel; it was the master doing wrong.

In 18 R. C. L. 795, the author says: "Acts impliedly authorized are such as are within the scope of employment. That is, wrongs for which the employer may be held accountable, are not susceptible of precise or even very helpful definition by any phrase or short form of expression. Each case must be determined with a view to the surrounding facts and circumstances, the character of the employment and the nature of the wrongful act." And further it is said by the same author: "The general idea is that the employee at the time of the doing of the wrongful act, in order to fix liability on the employer, must have been acting in behalf of the latter and not on

138 Miss.—3.

his own account.'' So we find that each case must be determined with a view to the surrounding facts and circumstances, the character of the employment and the nature of the wrongful act.

The facts and circumstances in this record show that May and Talley were not engaged in any private interprise; they had not stepped aside or departed from their master's business and engaged in a fight over and about some matter disconnected from their master's business. If, when May went around on Talley's side of the skidder to discharge a duty he owed his master, Talley had wilfully knocked the supports from under the skidder so as to cause it to fall on May, could there by any dispute as to liability? Or if Talley had applied the steam and in this way wilfully caused the skidder or some part thereof to strike and hurt May, would the appellant not be liable?

What difference, so far as liability is concerned, does it make if Talley wilfully struck May with a bar of iron instead of wilfully causing the skidder to fall on him or wilfully applying the steam and causing the skidder to hurt him?

We submit that the distinction is clearly without a difference. The hanger, the skidder and the bar of iron were all parts of the master's works, and the master's business, caused the assault by Talley; the assault was over and about the master's works and during and in the furtherance of the master's works. We say that the case at bar is just as strong a case on liability as the *Green case, supra.* In the Green case it was not a question of how necessary it was to throw the switch, but the question was, was it the duty of the one to throw the switch for the other, and in the case at bar it was not a question of how necessary to the prosecution of the master's works it was to keep and maintain the hangers, but the question is, was it the duty of May to take care of and preserve the hanger. If it was his duty to keep and maintain this hanger, then he was not engaged in a

private affair when he made inquiry about it and it follows that he was acting in furtherance of his master's business when he was assaulted by Talley.

Would May and Talley have fought about this hanger had it not belonged to and been used by the master? We think not. What did they fight about? About the hanger? Whose hanger was it? The master's. What was the hanger for? Counsel on the other side says it was for the purpose of accommodating the negro employees, but it was for use on the master's works. Whose duty was it to look after this hanger? May's duty. So, we conclude from all the facts and circumstances in this case: That at the time Talley assaulted May they were in and about their master's business and that the assault grew out of the master's business and that the assault was caused by reason of an effort on May's part to further the master's business.

We submit, also, that the question as to whether the assault was or was not such as to be within the "course of employment," "scope of employment," "furtherance of the master's business," "employer's service," was fairly submitted to the jury on instructions that appellant does not complain about and the jury found for plaintiff on this question. This question is usually one for the jury. 18 R. C. L. 254, and authorities cited.

We think the case ought to be affirmed.

Etheridge, J., delivered the opinion of the court.

The appellee sued the appellant for an assault committed on him by an employee of the Great Southern Lumber Company and recovered a judgment from which this appeal is prosecuted.

The plaintiff and one Percy Talley were employed by the Great Southern Lumber Company in and about the operation of a skidder. The skidder at the time of the acts complained of was being dismantled to be removed to another point. May and Talley worked on opposite

sides of the skidder and were under a man named Warren, as foreman. May, the plaintiff, missed a hanger on his side of the skidder and made inquiry of a negro employee as to what had become of the hanger and was informed that Talley had taken it. May then went on the opposite side of the skidder and asked generally of the persons employed, "Which of you boys has got my hanger?" and that Talley replied with an oath that he had it and would take anything else he wanted and that May then replied, "I don't know about that. I don't think I would let a man take something I was working with without saying or doing anything about it." Thereupon Talley applied to May an epithet which stirs the fighting blood of a Southern man, as placing a negro "in the dozen" stirs up his combativeness.

According to the plaintiff, Talley assaulted him first, striking him with an iron, and then they clinched and Talley struck the plaintiff several blows in the face with his fist and tried to get a pine knot which May succeeded in keeping out of his reach. While they were clinched Warren, the foreman, happened along and separated the two men. May seems to have been badly worsted and was sent to a doctor for medical treatment and was under treatment for some days and according to the doctor, he appeared to have fractured a rib where it joins to the breastbone.

At the conclusion of the plaintiff's evidence the defendant moved to strike out the evidence and asked for a peremptory instruction, which motion was overruled. The defendant also requested a peremptory instruction at the close of the whole case which was also refused.

Neither the declaration nor the proof shows a case where the master was negligent. Talley had no control or direction of the services of May, and May had no control or direction of the services of Talley. Neither one stood in the master's shoes in relation to the other, and the act of Talley cannot be said on the facts in this case to be the act of the master. There is an allegation

that the master was negligent in employing Talley or that Talley was in fact a dangerous and vicious man whose employment would endanger the safety of the other employees. The proof wholly fails to show that Talley was in fact quarrelsome or dangerous. The proof does show that Talley was not discharged after the assault, but was kept in the employment of the appellant until he became sick and left such employment. Therefore the case does not come within the pronouncement of this court in *Hines* v. *Green,* 125 Miss. 476, 87 So. 649, where the rule was announced that a master who employs a dangerous, quarrelsome, and vicious servant, or retains him in his service after knowledge of his dangerous character, and such servant, while in the course of his employment, and in furtherance of the master's business, commits an assault on another servant who is also employed in the master's business and is acting in furtherance of the master's business is liable for the injuries resulting from such wrongful assault.

It is not sufficient to constitute liability that the quarrel and assault arose about the master's business, but the master must owe some duty to the person assaulted or must have been guilty of some misconduct or negligence with reference to the matter about which the assault was inflicted.

In the *Green case, supra,* the proof was clearly that the master had knowledge of the dangerous character of his employee and retained such employee over the protest and objection of other employees in his service.

In *Hines* v. *Cole,* 123 Miss. 254, 85 So. 199, it was held by this court that the master is not liable for the wrongful assault by one servant on another, unless the servant in making the assault was acting within the course of his employment with a view to the furtherance of his master's business; that under the rule at common law a master is not responsible to the servant for an injury sustained by him because of the negligence of another servant while both were engaged in the same service,

with this exception, that a master who negligently or knowingly employs or retains in his service an incompetent servant is liable for injuries to a fellow servant resulting from the incompetency of the servant so employed and retained, unless the injured servant has assumed the risk incident to such incompetency.

Under our statute abolishing the fellow-servant rule, it is abolished where the master is negligent with reference to the subject-matter of the cause of action, but if the master is not negligent the statute does not apply.

We think, under the facts disclosed by the record, there was no liability on the appellant; therefore the judgment will be reversed, and judgment rendered here for the appellant.

*Reversed, and judgment here.*

### ON SUGGESTION OF ERROR.

ETHRIDGE, J. It is insisted on suggestion of error that the court misconstrued *Hines, Director General,* v. *Cole,* 123 Miss. 254, 85 So. 199, where it was announced in the fourth syllabus that:

"When the fellow-servant rule does not apply, the master is responsible for an injury wrongfully inflicted by one servant on another, when acting within the course of his employment, with a view to the master's business, although the master was not negligent in employing such servant, or in retaining him in his service."

The fellow-servant rule has been abolished by statute in case of railroads and other corporations and individuals using engines, locomotives, or cars of any description whatever propelled by the dangerous agency of steam, etc., running on tracks. It is provided in section 6684, Hemingway's Code (Laws of 1908, chapter 194), that every employee in such case shall have the same rights and remedies for an injury suffered by him from the act or omission of such railroad corporation or

others, or their employees, as are allowed by law to other persons not employed, etc.

In the case before us the skidder was not being operated, and the employment was not being conducted under the conditions named in the statute. The skidder was being dismantled, to be moved, and was not being operated, and the fellow-servant rule applied. In this state the doctrine of the assumption of risk is abolished where the master is negligent, but is not abolished where the master is not negligent, except as provided above. One of the risks assumed by employment where the assumption of the risk is not abolished, and where the master is not negligent in the employment or retention of a servant, is the danger incident from the operation of the business by the act of a fellow servant in carrying on the business. As stated in the main opinion in this case, the master here was guilty of no negligence in the original employment of the servant committing the assault, nor in retaining him, for the evidence failed to show that the servant who inflicted the injury was a vicious, quarrelsome, or dangerous man. The opinion does not, in our view, change the rule announced in *Hines* v. *Cole, supra,* or in *Hines* v. *Green,* 125 Miss. 476, 87 So. 649.

The suggestion of error will therefore be overruled.

*Overruled.*