## Pearl River Valley R. Co. *v.* Moody.

(Division A. Jan. 11, 1937. Suggestion of Error Overruled Feb. 8, 1937.)

[171 So. 769. No. 32394.]

(1)

2

Brady, Dean & Brady, of Brookhaven, for appellant.

4

**Grayson B. Keaton,** of Picayune, and **Hall & Hall,** of Columbia, for appellee.

Argued orally by **Thos. P. Brady**, for appellant.

**Cook, J.,** delivered the opinion of the court.

Appellee instituted this suit against the Pearl River Valley Railroad Company, appellant, seeking to recover damages for personal injuries alleged to have been sustained while he was employed in repairing a bridge on the line of railroad owned by said company. There was a verdict and judgment in favor of the appellee for $2,250, from which this appeal was prosecuted.

The original declaration alleged, in substance, that while appellee was employed by appellant, and was engaged in and about the repair on a railroad bridge, he and three colaborers were required to remove, from its position underneath the bridge, a mud sill approximately twelve inches square and fourteen feet long, which rested upon, and was imbedded in, earth and mud, and was soaked in water and very heavy; that the appellant directed the appellee and his three co-workers to remove the said piece of timber by picking it up and carrying it from under the bridge; that it therefore became and was the duty of appellant to furnish a sufficient number of servants to perform the work; and that the appellant negligently failed to discharge its duty in this, to wit, "the said piece of timber, in its said water-soaked condition, and imbedded in the earth and mud, was of such great weight that four men could not lift and carry the same with reasonable safety, and it then and there reasonably required the services of more than four men to do the said work, and the defendant then and

there knew the same, or should have known thereof by the exercise of reasonable care, but the defendant negligently required the plaintiff and the three coworkers to do the said work.''

The declaration further averred that the appellee and his three co-workers, in obedience to the command and direction of appellant, undertook to lift and carry the said heavy piece of timber, and while so engaged the great weight of the timber bore down upon appellee with such great force that the wall of his abdomen was torn, and he was thereby caused to sustain a rupture, or hernia.

To this declaration appellant filed a plea of the general issue, and gave notice thereunder that it would offer evidence to show that, at the time of the alleged injury, the appellant and appellee were engaged in interstate commerce, in that they were engaged in repairing a bridge which was used in interstate commerce, on account of which, the rights, remedies, and defenses of the parties were controlled by the Federal Employers' Liability Act, 45 U. S. C. A., section 51 et seq., and that the appellee knowingly and voluntarily assumed all risks of his employment.

Thereafter, by leave of the court, appellee filed an amended declaration in two counts, adopting in full as the first count of his amended declaration the original declaration, and alleging in the second count that appellant and appellee were engaged in interstate commerce at the time appellee was alleged to have been injured, and that his cause of action was governed by the Federal Employers' Liability Act. This count of the declaration set forth in detail the facts showing that the parties were engaged in interstate commerce.

After the filing of this amended declaration, appellant moved the court to require appellee to elect upon which of the two counts he would stand, for the reason that the first count was based upon the common law as

interpreted by the courts of the state of Mississippi, while the second count was based upon the Federal Employers' Act, and they were therefore inconsistent and antagonistic. This motion was overruled, as was also the motion to strike the first count.

Appellant then filed pleas of the general issue and gave notice that it would offer evidence to show that, even if the methods and means adopted by appellant in the repair of the bridge were not proper, and the number of employees engaged in work was insufficient for the purpose of handling the said sill or timber, all of which was denied, still the risks, if any, were open, obvious, patent, and known to the appellee, and were knowingly and voluntarily assumed by him. This notice further set up that appellee was the sole judge of his own strength, and was not required to overexert himself, and at all times he had the right and was in a position to quit the work he was performing, and that even if he sustained the injury complained of, which was denied, it was due proximately and solely to his own negligence and carelessness in voluntarily and unnecessarily overexerting and taxing himself.

To this notice, appellee filed a counternotice asserting that he was required to overtax his strength beyond that which in his judgment he was capable of doing, denying that at all times he had a right and was in a position to stop the work he was performing, and alleging that on the occasion in question, the appellant, through its foreman in charge of the crew, whose orders the appellee was required to obey, coerced him into lifting and carrying the said heavy sill under threat that he (the appellee) would be discharged; and that said foreman then and there promised appellee that appellant would provide additional employees to work in concert with him in removing the remaining timbers after the one they were then removing had been removed; and that in attempting to remove the 12x12 timber in

question, he relied on the promise of the foreman to furnish additional help in removing the others; and, therefore, his act in trying to lift, move, and carry said timber was not a voluntary act on his part, and he did not assume the risk thereof.

Appellant moved the court to strike the affirmative matter set up in appellee's counternotice, for the reason that it was not responsive to appellant's notice and alleged new and unexpected grounds of negligence which, under the original and amended declaration, could not have been anticipated; and this motion was overruled.

Upon the issues thus joined, the testimony of many witnesses was offered. Appellee testified, in substance, that his foreman, who was in charge of repairing the bridge, ordered him and three co-workers to remove a mud sill, twelve inches square and fourteen feet long, which was imbedded about two feet deep in wet ground; that during all the time he had worked with this crew eight men were usually employed in moving mud sills of this size; that he (the appellee) stated to the foreman that the sill was too heavy for four men to handle; that the foreman then directed them to go ahead and get it out and promised that additional men would assist in removing the remaining sills; that he again complained that it was too heavy to move; and that the foreman then said to them "Get it out or go on down the road and I will get four men that can take it." In this testimony the appellee was fully corroborated by two of his co-workers, who testified that they joined in appellee's complaint that the timber was too heavy for four men to handle, and that the foreman ordered them to remove the sill, or get off the job. The fourth member of this particular crew testified that he did not hear any such complaint or any threats on the part of the foreman to discharge them if they did not remove the sill.

Appellee further testified that in order to avoid being discharged and relying on the promise of the foreman

that additional help would be provided to remove the remaining sills, he proceeded in the effort to remove the sill. He testified that it was first necessary to dig the dirt from around the sill, and that this left it lying in a ditch or trench about two feet deep; that the four workers then lifted one end of the sill out onto the bank of the trench with lug hooks provided for that purpose, and that it was then necessary for two of the workers to hold that end with the lug hooks to prevent it sliding back into the trench; that while they were so doing, he and the other worker went to the other end of the sill or timber to lift it out of the trench with the lug hooks; and that when he lifted up on the handle of the hooks attached to the end of the sill, he felt a severe tearing sensation and burning pain in his side and groins which caused him to suffer severe nausea, and produced immediate evidence of hernia. He further testified that the sill was water-soaked, covered with mud, and slightly decayed at certain points, and weighed about 1,200 pounds. Other witnesses estimated the weight of similar sills at from 800 to 1,000 pounds. Appellee also testified that he knew the sill was too heavy for four men to lift and remove, but that he did not appreciate the danger of suffering injury in attempting to remove it.

Numerous witnesses for appellee and several for appellant, some of whom were bridge men of long experience, testified that four men were not sufficient to handle a sill of that size and type, and that it was usual and customary to assign six to eight men to such a job. There was also testimony on behalf of appellee that there was no way of removing the sill without first lifting it out of the trench in which it was lying after the dirt had been dug from around it. Other facts in evidence will be referred to in connection with the discussion of some of the assignments of error.

The first assignment of error urged by appellant is based upon the refusal of a peremptory instruction requested by it. In support of this assignment, appellant submits several contentions, which will here be considered in the order in which they are submitted by counsel for the appellant. It is first contended that, in avoidance of the doctrine of assumption of risk, the appellee wholly failed to produce evidence showing any actual threat to discharge him if he did not assist in removing the sill in question, or that he was coerced into lifting it. It is true, as contended, that the alleged threat was directed to the entire crew of four men who were assigned to the work, and there was no evidence that the foreman was angry, or a man lacking in self-control who was in the habit of discharging employees, but the order to proceed with the work or leave the premises, as testified to by the three members of the crew, was peremptory, and we think it was a question for the jury to determine whether, upon the whole evidence, the appellee, as a reasonable man, had reasonable grounds to believe that he would be discharged if he did not attempt to remove the sill, and whether he, therefore, voluntarily attempted to do so.

The next contention upon this point is that the promise of additional help on the remaining timbers could not in any way have been of assistance to the appellee in removing the mud sill in question, and did not constitute a promise of reparation upon which the appellee could rely in continuing the effort to remove the sill around which he was then working. While it is true that this promise was of no benefit in removing the particular sill, it was an inducement to him to continue his effort to lift and remove the sill, and assurance that the four men would not again be called upon to do this unusually heavy work. And if thereby he was induced to continue in the employment and in the particular work, he did not assume the risk incident thereto. In the case

of Seaboard Air Line Railway v. Horton, 233 U. S. 492, 34 S. Ct. 635, 640, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475, the principle is recognized in the following language: "When the employee does know of the defect, and appreciates the risk that is attributable to it, then if he continues in the employment without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employee assumes the risk, even though it arise out of the master's breach of duty. If, however, there be a promise of reparation, then during such time as may be reasonably required for its performance, or until the particular time specified for its performance, the employee, relying upon the promise, does not assume the risk unless at least the danger be so imminent that no ordinarily prudent man under the circumstances would rely upon such promise."

It is next contended that the peremptory instruction should have been granted for the reason that, if it be assumed that the statement made by appellant's foreman amounted to coercion, in that appellee was justified in believing that the tenure of his employment was imperiled if he did not remove the sill, and it be further assumed that said foreman promised additional help on all the remaining sills, still under the provisions of the Federal Employers' Liability Act the appellee assumed the risk of removing the sill. The argument in support of this contention proceeds principally upon the theory already hereinbefore considered that the promise of additional help on all remaining sills was not such a promise as appellee could rely on as relieving him from assuming the risk incident to the removal of the particular sill in question. The principle that where there is a promise of reparation, the employee does not assume the risks of his employment during such time as may be reasonably required for the performance of the promise or until the particular time specified for its

performance, is expressly stated in Seaboard Air Line Railway v. Horton, supra, and also in Hough v. Texas & P. R. Co., 100 U. S. 213, 225, 25 L. Ed. 612, in the following language: "If the servant . . . having a right to abandon the service because it is dangerous, refrain from doing so in consequence of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the master is not in the exercise of ordinary care unless or until he makes his assurances good. Moreover, the assurances remove all ground for the argument that the servant by continuing the employment engages to assume the risks."

The same principle is recognized by this court in numerous cases, as illustrated by the cases of Louisville & N. R. Co. v. Russell, 164 Miss. 529, 144 So. 478, 480, wherein it was said that, "where an employee knows of the danger, and there is no promise to remedy such danger upon which he relies, and he continues in the employment, he assumes the risk by so doing." And also in Gulf & S. I. R. Co. v. Hales, 140 Miss. 829, 105 So. 458, 459, wherein the court said, "it was held under the Federal Employers' Liability Act that when the employee knows of a defect in an appliance used by him and appreciates the resulting dangers, and continues in the employment without objection or without obtaining from his employer an assurance of reparation, he assumes the risk even though it may arise from the employer's breach of duty."

We do not think the dangers and risks incident to the removal of the particular sill were so obvious and imminent that no ordinarily prudent man under the circumstances would rely on a promise of reparation, and it appears to us that reliance on a promise of additional help on all remaining sills might be held to inure to the benefit of the appellee in avoidance of the risks that otherwise might be assumed by continuing his em-

ployment in and about the removal of the particular sill; and that upon the whole evidence the question of whether or not, in continuing with the work, the appellee voluntarily assumed the risk incident thereto, was one for the consideration of the jury.

It is also contended that the peremptory instruction should have been granted for the reason that appellee had the right to adopt a safe method of removing the sill, but instead of doing so, he elected and chose an unsafe and dangerous method. Upon this point it is urged that if appellee and his co-workers had removed the sill by sliding or dragging it over the bank and from under the bridge, or if the four laborers had carried the end which they first lifted out of the trench to a point or angle from the trench from which it could not have rolled or slid back, then they would all have been free to lift the other end out of the trench. When it is remembered that this very heavy fourteen-foot sill was lying in a trench two feet deep with one end bound by the walls of the trench, the impossibility of the suggestion last above mentioned appears manifest. There was testimony on behalf of the appellee to the effect that as the sill was located in the ground under this bridge, it was impossible to drag or slide or roll it out without first lifting it out of the trench in which it was lying. Although he was present while the dirt was being dug from around the sill, it is not made to appear that the foreman gave any directions as to the method to be employed in removing it, and his order to proceed with the work then in progress and get the sill out was some evidence of approval of the method being employed; and in view of all the testimony bearing upon the location of the sill, the place in which they were required to work, the surroundings, and the available methods of removing the sill, we do not think appellant was entitled to a peremptory instruction on the ground that

appellee chose an unsafe method of removing the sill; or upon any other grounds presented in the argument.

Upon all the issues presented by the pleadings, we are of the opinion that the evidence was sufficient to support the verdict, and that there is no merit in the contention that the verdict is against the overwhelming weight of the evidence.

Appellant next argues that the court committed reversible error in refusing to strike the common-law count from the declaration and in permitting the introduction of evidence thereunder. There is authority for the view that it is permissible to join in one declaration separate counts under the state law and under the federal act; but it will be unnecessary to here consider the point, for the reason that, under the facts shown by this record, appellant could not have been prejudiced by the failure of the court to strike the first count, or by the introduction of evidence thereunder. At the conclusion of the evidence offered by the appellee, the court peremptorily instructed the jury that there could be no recovery on the first count of the declaration, and this cured the error, if any, in failing to strike the count.

The appellant also complains of two instructions granted the appellee, and of the refusal of two instructions requested by appellant. Appellee's instructions, which are the subject of complaint, set forth with substantial accuracy legal principles in accordance with the views already herein expressed. Each of the two refused instructions was identical in language with one that was granted, except the omission of one word. In each case the given instruction set forth in detail circumstances under which the appellee would not be permitted to recover if he "voluntarily attempted to remove the mud sill with the help of three coworkers." The refused instructions set forth in the same language the identical circumstances as preventing a recovery if the appellee "attempted to move the mud sill with

the help of three co-workers." Assuming that, under the evidence, the two instructions referred to above announced correct legal principles, there was then no error in the refusal of the two additional instructions which embodied substantially the same principles.

Appellant finally contends that the verdict of $2,250 is so excessive as to evince passion and prejudice on the part of the jury. Appellee's physician testified that on occasions when he examined him, he was suffering from an incomplete hernia which necessitated the wearing of a truss, and that it would cause pain and would handicap him in moving around and doing manual labor. He further testified that this condition could only be corrected by a major operation, and that such operations were usually, but not always successful. Appellee testified that, on account of the hernia, he could not do manual labor, or move around to any great extent without wearing a truss; that it caused him almost continuous pain, and particularly so when he attempted labor which required him to stand on his feet for any length of time. There was also testimony that at times the condition became such as was termed by the physician a complete hernia. Under this testimony we do not think it can be said that the verdict was so excessive as to evince passion or prejudice.

We find no reversible error in the record, and therefore the judgment of the court below will be affirmed.

Affirmed.