CURRY & TURNER CONST. CO., INC., *et al. v.* BRYAN.

(Division B. Jan. 2, 1939. Suggestion of Error Overruled Jan. 30, 1939.)

[185 So. 256. No. 33436.]

J. **Sidney Finch,** of Booneville, and **Leftwich & Tubb,** of Aberdeen, for appellants.

48

Jas. A. Cunningham, Frank W. Cunningham, and Donald M. Franks, all of Booneville, for appellee.

Argued orally by **C. L. Tubb**, for appellant, and by **Jas. A. Cunningham**, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellee intended to use kerosene in a can container to start a fire. Instead he got hold of a can of gasoline. The result was an explosion burning him from the hips down which, the evidence tended to show, rendered him a physical wreck for the balance of his life. The explosion occurred on the 22d day of February, 1937. The trial took place about a year afterwards. Appellee was about thirty-six years of age. He had not been able to walk. His legs were drawn at the knees at an angle of about forty-five degrees. He brought this action against appellants, the construction company and certain of its servants, to recover damages for the injury. At the time of the injury he was one of the construction company's servants. He alleged as ground for recovery that it was through appellants' negligence that he inadvertently used gasoline instead of kerosene in starting the fire. He charged further that he was acting in the service of the construction company and within the scope of his duties

in the making of the fire. There was a verdict and judgment in the sum of $22,500, from which judgment appellants prosecute this appeal.

The Court overruled appellants' motion for a directed verdict. That action of the Court is assigned and argued as error. Appellants, in their brief, state that they rely mainly for reversal on that alleged error.

The construction company is a foreign corporation. It was engaged in the construction of about nine miles of Highway 45 between Baldwin and Booneville. For that purpose it had the usual equipment, consisting of tractors, grading machines, draglines, and other instrumentalities, among which were five tractors equipped with Diesel engines. These Diesel engines were heavy and hard to crank, and, for that reason, were equipped with small starter motors operated on the same principle as the ordinary gasoline engine, in which gasoline was used as a starter. After they got started the starter motor was cut off and fuel oil was used as power. The equipment was assembled from time to time in what was known as camps. At such places there were no sheds, houses, or buildings of any kind. At such camps, the construction company provided what was known as a tool box, about ten feet long, about five feet wide, and about five feet high. It had a top with hinges. In this box were stored small tools and equipment, including gasoline, kerosene, grease, and other articles used about the work. The kerosene can was newer than the gasoline can. In order to distinguish one from the other, there was usually kept tied with a string on the upper part of the gasoline can its top and the top to its spout. This was done to prevent the use of one for the other. The foremen on this job were Autry and McRae, and the superintendent was Dozier. The weather was very cold at the time of the injury. According to the evidence for appellants the kerosene was to be used alone in lighting lanterns and for flares; that each crew was provided with what was known as grease

monkeys, whose duty it was to build fires to heat the grease guns used in greasing the machinery; that appellee operated a tractor and had nothing to do with the building of fires for any purpose, and that the method of keeping kerosene and gasoline in the same tool box with a distinguishing mark was in common practice among road builders. The evidence for appellee which the jury believed, and were justified in so doing, was to the effect that the servant reaching the camp first in the morning was to build a fire for the purpose of heating the grease guns and to enable the servants to warm by before going to work; and that it was a custom, with the construction company's knowledge and consent, to use kerosene with which to start the fire; that on the morning of the injury appellee reached the camp first, and, following the custom, arranged the kindling and wood for the fire, then went to the tool box and felt for the can with nothing tied on the top of it, found it, and believing that it contained kerosene, as it should have, used it in making the fire, resulting in the explosion and injury; that the explosion was caused by its being gasoline instead of kerosene; that the interchange of the contents of the two cans was without appellee's knowledge and occurred the day before the injury through the negligence of fellow servants and foreman McRae. The evidence for appellee was further to the effect that if kerosene had been used instead of gasoline, the explosion would not have taken place. The appellee, in his testimony, describes the occurrence in this language: ''I went to the tool box to get the can, it was early in the morning and the tool box was a little deeper than I could reach, I had to breast over the edge of the box and reach over after the can, and I went there and reached over and got hold of this can, felt first to see if there was any string on the top of the cap, and I didn't find any, and I pulled it up so I could see and it resembled the kerosene can and I took it to where I had some wood piled up and poured it on the wood, poured

about a quart, and struck a match and set it afire and went and got some more wood, and when I came back there was quite a bit of frost on the wood and the fire had died down, was about to go out, and I picked up the can and sloshed some of the contents on there and brought the can back to me and as the flash came up from the fire it caught back on the fumes and the can exploded.''

Gasoline is a dangerous agency; it is highly explosive. Standard Oil Company v. Evans, 154 Miss. 475, 122 So. 735. Appellants argue that there could be no recovery under the fellow servant rule; that if there were any negligence proximately contributing to his injury, it was that of a fellow servant and not of appellants. The evidence showed without any substantial conflict that the two foremen, Autry and McRae, were not fellow servants with appellee, and his coservants, but had the right to, and did, direct and control their services for the master. Were appellants guilty of any negligence proximately contributing to the injury? We think the evidence made that an issue for the jury and we come to that conclusion upon the following considerations: The master is required to use reasonable care to furnish his servants a reasonably safe place to work, and reasonably safe instrumentalities to work with, and reasonably safe methods and rules under which to work. Eagle Cotton Oil Co. v. Pickett, 175 Miss. 577, 166 So. 764; Albert v. Doullut & Ewin, Inc., 180 Miss. 626, 178 So. 312; Scott Burr Stores Corp. v. Morrow, Miss., 180 So. 741, 744. "In order to relieve the master from liability for an injury to one of his servants the negligence of a fellow servant must have been the sole cause of the injury, and not commingled or combined with the negligence of the master or his representative.'' 4 Thompson on Negligence, pars. 4856, 4863, quoted with approval in the opinion in the last case above referred to. Putting the principle in different language: The last proximate cause of the injury is the negligence of a fellow servant, but the proximate cause of his negligence was

that of the master, the fellow servant rule has no application; both the fellow servant and the master are jointly and severally liable to the injured servant—the negligence of both proximately contribute to the injury. Putting it in another way: The proximate cause of the proximate cause makes both the proximate cause.

The gasoline and the kerosene were instrumentalities used in the work. In view of the dangerous character of the gasoline, it was the duty of the construction company to prescribe reasonably safe rules and methods for its storage and handling in order to prevent injury to its servants. We are of the opinion that the evidence made it a question for the jury whether that obligation was met. Whether reasonable care required that separate places of storage should have been provided for the cans of gasoline and kerosene, or different and more pronounced methods of distinguishing one from the other if stored together we think was a question for the jury.

In addition to what has been said, we think our comparative negligence statute, Section 511, Code of 1930, and the statute abolishing the assumption of risks doctrine between employer and employee (Section 513, Code of 1930) answer a good deal of appellants' argument that it was entitled to a directed verdict.

Appellants argue that there is no liability because appellee at the time of the injury was engaged about his own affairs and not serving his master. That contention is based on these facts, which were undisputed in the evidence: The building of the fire, and the explosion, and the injury all occurred before, although only a few minutes before, appellee's work day begun. The fire was being built, as already stated, for the servants to warm by and to heat the grease guns used in greasing the machinery. The contention is without merit. Injury to a servant while gathering fire wood before working hours for such a purpose arises out of, and in the scope of, his employment. 4 La Batt's Master and Servant (2 Ed.), p.

4690; Ziolkowski v. American Radiator Co., 247 N. Y. 513, 161 N. E. 164; Geibig v. Ann Arbor Asphalt Const. Co., 238 Mich. 560, 214 N. W. 90.

Over appellants' objection appellee was permitted to introduce evidence showing doctors' and hospital bills necessarily incurred on account of the injury. The objection was general. It is argued that it should have been sustained because such elements of damages were not claimed in the declaration. Section 555, Code of 1930, answers that contention. Appellants' remedy was an affidavit that a bill of particulars was necessary to their defense.

On the voir dire examination of the jury, over appellants' objection, counsel for appellee were permitted by the Court to state to the jury that this was a suit for a large amount, and to ask each of them whether or not if the proof showed that appellee had been damaged in a large amount it would embarrass them to return a verdict for a large sum. This appears to have been an unusual examination of the jury. We cannot say that it harmed appellants' cause. Appellants' counsel could have put the converse of the proposition to the jury—that although a large amount was sued for, appellee was not entitled to recover any sum whatever, and, if that were true, would it embarrass them to return verdict for appellants?

We do not think there is sufficient merit in the other alleged errors to require a discussion by the Court. In all substantial respects the jury was fully and correctly instructed as to the governing principles of law, nor do we think there was any harm done appellants by their refused instructions. The instructions given for appellee complained of and those refused appellants are of such a character, we are unable to see that a discussion thereof would be of any substantial benefit to the bench and bar.

Affirmed.