COUNTRY CLUB OF JACKSON *v.* TURNER.

(In Banc.   Nov. 24, 1941.)

[4 So. (2d) 718.   No. 34734.]

R. H. & J. H. Thompson, of Jackson, for appellant.

**Edwards & McDonald,** of Jackson, for appellee.

Argued orally by **J. H. Thompson**, for appellant.

**Alexander, J.,** delivered the opinion of the court.

The action was based upon an assault and battery committed by a servant of appellant upon appellee who was engaged by it to serve as a caddy for its members playing golf. The declaration is in two counts. The first count is drafted upon the theory that the offending servant was of dangerous character and ungovernable temper, which was known or ought to have been known by appellant, and the ground upon which the plaintiff predicated liability was the alleged negligence of defendant in employing and retaining the servant. The second count adopts the theory that the said servant, Cobb, was a vice principal and committed the assault while in the scope of his employment and in furtherance of the business of the club.

The allegations of the second count are almost obscured by the emphasis placed upon the alleged propensities of the servant Cobb, by the testimony, the instructions and the arguments of counsel. There was an instruction requested by plaintiff submitting the issue of scope of employment, but this was refused by the trial court. This was undoubtedly proper since the assault, consisting of slapping plaintiff once, was committed during a voluntary departure by Cobb from his usual course of employment and as an incident to a gratuitous interference with a purely personal altercation between plaintiff and an employee of the club, over neither of whom Cobb had any authority or control. Alabama & V. Ry. Co. v. Harz, 88 Miss. 681, 42 So. 201; Hines v. Cole, 123 Miss. 254, 85 So. 199; Great Southern Lbr. Co. v. May, 138 Miss. 27, 102 So. 854, 103 So. 363; McCarty v. Mitchell, 169 Miss.

82, 151 So. 567; Hahn v. Owens, 176 Miss. 296, 168 So. 622; Tarver v. J. W. Sanders Cotton Mill, 187 Miss. 111, 192 So. 17.

A peremptory instruction was requested by the defendant and its refusal is assigned as error. From what we have said it remains for us to examine only the sufficiency of the evidence under the first count. Compliance with the duty to use reasonable care to maintain working conditions that are reasonably safe involves the duty to use such care in avoiding the employment or retention of a servant who is known to be dangerous or vicious where such propensities are calculated to expose co-employees to greater dangers than the work necessarily entails. This principle no longer needs cited authority. Here there is no issue of fellow-service involved and appellee bases his right of action under the first count, squarely upon Jones v. Alden Mills, 150 Miss. 90, 116 So. 438. This case involved the duty of a master toward an invitee upon its premises. Jones was in the habit of visiting the defendant's mill for the purpose of vending light merchandise to the employees among whom was one Burroughs, known to the master as a man of vicious disposition, habitually using his knife in personal encounters. The master further knew of prior personal difficulties between Burroughs and plaintiff and of the threat and plan of Burroughs to do violence to plaintiff. Jones brought suit for the assault which inevitably followed. Here the issue of scope of employment was not important, since the presence of Burroughs upon the premises and under control of the master created to the master's knowledge a condition that rendered the premises unreasonably unsafe as to Jones in violation of the duty owed to an invitee. It is appropriate that appellee invokes this principle here, since it alone could support his right to recover. Let us therefore examine the testimony to ascertain whether (1) the servant Cobb was in fact of a vicious or dangerous character and (2) whether he was retained in service when such fact was

or should have been known to appellant. Discussion of the other prerequisites to liability as set forth in Ingram Day Lbr. Co. v. Joh, 107 Miss. 43, 64 So. 934, is here unnecessary.

Cobb was nineteen years of age and the appellee thirteen. Cobb had been employed upon proper recommendations and there is no evidence of any acts indicating violence prior thereto. His duties were to operate and maintain machinery for the upkeep of the grounds and golf course. He had no control or supervision over the caddies, and in his duties he was under the immediate control of J. N. Giddens, who had charge of the grounds and who maintained a golf shop in the club and gave instruction as a professional golfer. Although one witness testified that Cobb "would get after the caddies around there lots of times," only two specific instances of alleged misconduct are given in evidence as a basis for the characterization of Cobb as vicious or dangerous. The first involved one Lindsey McDonald, a negro caddy who testified that "Yes, sir; him (Cobb) and Bill Horton was fixing a little fence right at the corner of the club, and I went across, and he told me to keep on down to the road; I went on down to the road and he brought Mr. Giddens down there and him and Mr. Giddens talked, and Mr. Giddens told me to come on back and be a good boy;" and later that "I come back up there the next day—I come back mostly to sell my caddy pin and he asked me what I was doing there, and I told him to sell my caddy pin; he said give it to me and he would sell it, and he took it in there and brought my quarter back for it, and he told me not to be caught up there any more. I told him I didn't have any business there, and he said he was tired of these negroes talking back at him, and he started kicking me and hitting me." The other related to another negro caddy, Monroe Holloway, who testified:

"I was out there playing golf—He (Cobb) went back of me and drawed his fist, and I run.

"Q. You ran? A. Yes, sir.

"Q. What did Mr. Cobb do then? A. He ran behind me.

"Q. Did he catch you? A. No, sir.

"Q. How far did you run? A. I ran about—I reckon about 150 yards."

This testimony was sought to be supplemented by a general statement by another witness that he had seen Cobb "run some other (colored) caddies off" and that this was for "being down at the club house." Such was the case presented by the plaintiff. For the defendant, Cobb testified that he had run the witness Lindsey McDonald off the club grounds at the request of Giddens, his superior, because McDonald had been selling whiskey to the other caddies. He denied any battery upon McDonald. He further testified regarding Monroe Holloway that he ran the latter off the club premises at Giddens' direction because Holloway had drawn a golf club on the witness. On this occasion there was no battery of any kind, but the offending caddy was chased off the grounds substantially as depicted by himself. As to the particular incident out of which liability is sought to be imposed, it is in point that Cobb's presence upon the scene was procured at the request of one Horton who sought Cobb's assistance in preventing plaintiff from disturbing Horton at his work and that Cobb's version of the assault represents it as a reprisal for insulting language used toward him by appellee.

Evidence of dangerous propensities should be clear, but definitions thereof are not always so. Each case must be looked to for materials for the construction of a suitable standard. Unquestioned absence or presence of such trait may raise a question merely of legal sufficiency. Barmore v. Vicksburg, S. & P. Railway Co., 85 Miss. 426, 38 So. 210, 70 L. R. A. 627, 3 Ann. Cas. 594. Between these extremes lie issues of fact for the jury to resolve. Jones v. Alden Mills, supra, discloses one of those rare cases where a definite animosity toward plaintiff was given special color by the general violent conduct of a servant who had

made particular threats against the former. Such conduct gave to the very premises a quality of danger which it was negligence for the master to ignore. For a natural tendency to be characterized as vicious or dangerous within the principle invoked, such trait must inhere in the nature or disposition of the servant as an individual, and such innate or essential proclivity must be prone to a ready revelation in an unwarranted display of excessive force. Moreover, there must exist such a deviation from normal temper as to constitute as an unusual hazard any exposure to the probability of its manifestation. If in the instant case any force was in fact used in ejecting the caddies McDonald and Holloway from the premises, such force, to be evidential of a vicious character, would have to be sufficiently free of provocation or justification to make the conduct referable to such an inherent propensity for unjustifiable assault. Upon this question the dispute as to the existence of provocation may cast but a flickering light but the undisputed testimony that the two specific instances of assault, with or without battery, were in obedience to the orders of a superior divests these acts, even of themselves inadquate, of whatever evidential substance they may otherwise have afforded.

Cobb testified that at the time of the assault and battery upon plaintiff he (Cobb) had been in the club's employment only three days. Another witness fixed the time at "a month or more." Although those employed in the actual management of the club and several of its officers testified that they had not heard of the incidents referred to, it is not necessary to examine whether the club should in the exercise of due care have known thereof, since we are of the opinion that the testimony did not establish the fact of incompetency or viciousness on the part of Cobb.

The testimony of appellee indicates that the slapping was unjustified and wholly indefensible. The suit was originally brought against the club and Cobb jointly, but was non-suited as to Cobb on motion of appellee, thereby eliminating the only party against whom suit could suc-

cessfully be maintained. The peremptory instruction requested by appellant ought to have been granted.

Reversed and judgment here for appellant.