STATHAM *v.* BLAINE

No. 40919 December 1, 1958 107 So. 2d 93

January 12, 1959 108 So. 2d 213

*Aaron L. Ford,* Jackson, for appellant.

*Lipscomb, Ray & Barksdale,* Jackson; *Crawley & Ford,* Kosciusko, for appellee.

LEE, J.

This is an appeal by Mrs. Mary P. Hollingsworth Statham, by her next friend, plaintiff, from a judgment in favor of C. B. Blaine, the defendant, rendered by the Circuit Court of Hinds County, pursuant to a directed verdict which was given at the close of her evidence.

The declaration charged that C. B. Blaine, doing business as National Literary League, with his principal office at 617 West Capitol Street in the City of Jackson, Mississippi, owned a magazine sale and subscription business; that, through agents, he solicited and sold magazines throughout the United States; that James Robert Mattingly and Faye G. Vassey were managers, or crew leaders, under whom the plaintiff worked, and that they were her superiors and directed and controlled her work; that the defendant controlled both his managers and her in the performance of the work; and that she worked under these said managers from about July 1, 1956, until about the 18th day of February 1957 in several different states. It was further charged that, during this period of time, nine unlawful assaults and batteries, two of which constituted rape, were committed upon her by Mattingly, and one unlawful assault and battery was committed upon her by Vassey. The places and dates of the alleged Mattingly offenses were Salisbury, N. C., August 1956; Sikeston, Missouri, September 1956; Gonzales, Texas, November 1956; Beaumont, Texas, November 1956; Houston, Texas, December 1956—a rape; Lafayette, Louisiana, December 1956; Marshall, Texas, February 1957; Longview, Texas, February 1957; and Jackson, Mississippi, February 1957, where she was assaulted by Vassey; and was taken immediately by Mattingly to West Monroe, Louisiana, where he raped her.

It was further charged that Mattingly and Vassey were dangerous, of low and immoral character, had un-

governable tempers, and were lacking in proper mental and moral qualities to fit them for association with the plaintiff; that all of this was known, or should have been known by Blaine in the exercise of reasonable care and caution; and that the alleged wrongs and injuries, which she had suffered, were the proximate result of the negligence of the defendant in employing and retaining the alleged offending employees.

The defendant, in his answer, denied all of the material allegations of the declaration. He averred that Vassey was never his agent, but was an independent contractor; that Mattingly and the plaintiff had never been his employees and that he did not even know them; that, however, if they and Vassey were in fact his employees, the acts complained of were committed by fellow servants, and he was not liable therefor; that he never knew, or had reason to know, of the tendencies, provocativeness and proclivities of Mattingly and Vassey; that the plaintiff never complained to him of such traits of said alleged employees, or their alleged acts, and that he had no knowledge, either actual or constructive, thereof; that, by continuing to work from November 1956 until February 1957, with knowledge of such traits and characteristics of said alleged employees, the plaintiff assumed all risk incident thereto; and that, at all events, if the plaintiff should be shown to be his employee, her rights, if any, would be measured by the Workmen's Compensation Law, under which he had qualified.

Mrs. Statham testified that she finished the tenth grade in school. She had been in a Juvenile Orphanage in Helena, Arkansas, and, on Thanksgiving 1955, came to live with her mother in the City of Jackson. She became seventeen years of age on March 18, 1956, married a service man on April 16th, but lived with him only a short time, and went to work as a magazine solicitor in July. Subsequently on September 30, 1957, she obtained a divorce, married her second husband on October 18,

1957. Vassey hired her in Jackson during July 1956 and was her manager. Her work began in North Carolina. Mattingly worked in the crew. At times he drove the car for some of the workers, but also sold magazines. She also testified to various acts tending to show defendant's control of the manner of work. She mentioned the names of two girls, whom Mattingly fired and one that he hired, but his authority therefor was not shown. She testified to the occurrence of the various assaults, which she charged in her declaration, including the two charges of rape by Mattingly in Houston, Texas, and in West Monroe, Louisiana.

The alleged assault by Vassey in Jackson and the alleged rape by Mattingly in West Monroe, Louisiana, arose in this way: She had quit work in Longview, Texas, and had come home on Saturday, February 17, 1957. On the following Thursday, Mattingly came to her mother's home and asked her to get in the car as he wanted to talk to her. She refused. Then he proposed that, if she would go with him, he would not harm her and would help her to get any remaining amount of money due her. They went to Max's Drive-In on North Mill Street. Mattingly fixed some drinks. Vassey came out, appeared "like he was drunk or something", slapped her and said, "Why in the hell aren't you out selling magazines; what are you doing out here?" She "started feeling funny", and, while she did not remember it, actually she went to her home, packed her suitcase, got her clothes, and went in a car with Mattingly to West Monroe, Louisiana, where, when she awoke, Mattingly was in her room at the tourist court, and forcibly raped her.

The plaintiff admitted that she did not report any one of these assaults to the police, or to Blaine, or to her mother. Neither did she testify that she reported to Vassey any of the assaults which were committed upon

her by Mattingly. She did say that one or two of the girls knew something about several of the assaults.

Miss Betty Lou Smith testified that she was in Vassey's crew with Mattingly and saw Mattingly slap the plaintiff in Sikeston, Missouri. The plaintiff in Beaumont, Texas, came in one night and her face was red. One night in Houston, the plaintiff said ''Mr. Mattingly is after me'', and the witness shut the door to keep him out. In Marshall, Texas, on one occasion when she got back to the car, Mattingly was talking pretty rough to her, and his fingerprints were on her face. She had seen Mattingly hire two girls and fire another. Both Vassey and Mattingly also sold magazines. The solicitors were furnished duckets in which introductory testimonials, hereafter to be mentioned, were carried, and were required to make out daily reports. She testified to further acts tending to show direction and control from National Literary League.

Blaine, called as an adverse witness, produced copies of his 1955 and 1956 contracts with Vassey. They were identical in form and substance and expressly provided, that ''The relationship created by this contract * * * is not the relationship of master and servant but on the other hand the relationship of Faye G. Vassey to C. B. Blaine is that of an independent contractor, the said C. B. Blaine being interested solely in the ultimate result of the work as a whole of the said independent contractor and not in the details of the performance * * *'' The contract, in each instance, was for a period of one year, but Blaine could terminate it ''in the event that the ultimate result of the work alone as a whole is not in accordance with the provisions of this contract.'' He gave an explanation of the basis of pay, using this instance: On an order of $10, Vassey kept $5 to pay himself and employees, and sent Blaine $5. Of the amount received, Blaine kept $3.50 as his commission and for payment to the magazine publisher. The remaining $1.50 was tempo-

rarily credited to Vassey's account to assure against errors, etc.; and, when the account was verified, the balance due Vassey was paid to him.

As exhibits to Blaine's evidence, copies of the following were introduced: "Certificate of Authorization", which was an introduction of the representatives of National Literary League of 617 West Capitol Street, Jackson, Mississippi; the written froms for the sale of magazines, consisting of one copy for an office record, the subscriber's receipt from the National Literary League at its above address, and the verification thereof to be sent to that address by the subscriber; the identification and registration form, vouching for the trustworthiness of the persons named, and guaranteeing that, upon payment by the subscriber, the subscription would be forwarded promptly to the publisher; the weekly bulletin, known as Senator's Review, published by the defendant, of date of November 22, 1956, classifying groups of the workers and giving minute suggestions as to how their work should be done, with the name of Mary Hollingsworth listed as "38"; Senator's Review, Prize Safari, of date of November 3, 1956, listing the name of Mary Hollingsworth "45", with comment, "How about you, Jere Jones. Know you can write a $200 week! That goes for you too, Reba Lowe, and Mary Hollingsworth;" Manager's Bulletin, of date of January 26, 1957, which went to Vassey, with a number of instructions; Senator's Review, showing the standing in points as of September 15, 1956, with Mary Hollingsworth as "71" and again as "49", with numerous instructions; the account of Vassey from July 1, 1956, to March 1, 1957; a copy of Crew Manager's Registration at Better Business Bureau or Chamber of Commerce at Gonzales, Texas, under date of November 9, 1956, but not signed, as the crew of L. J. Mosley, in which the name of Jim Mattingly was included in the list of solicitors, (Blaine was of the opinion that Mosley was his crew manager at this place, but he did not know

Mattingly); copies of recommendations of National
Literary League and its representatives by W. D. Ray-
field, Chief of Police of the City of Jackson of date of
May 8, 1956, of Albert Jones, Sheriff of Hinds County,
of the same date, and Allen C. Thompson, Mayor of the
City of Jackson of date of May 14, 1956, which were placed
in the hands of the managers and solicitors. The de-
fendant made up and delivered to the managers duckets
in which to carry receipts, recommendations, etc., and
which, he said, were paid for by the solicitors. He also
admitted that he guaranteed the subscriptions.

The effect of the foregoing and other evidence, not
necessary to be set out in further detail, tended to show
that Vassey was not an independent contractor, and
that he, Mattingly and the plaintiff were in fact employees
and servants of the defendant.

Blaine further testified that the plaintiff did not, at
any time, either in person, by letter, or otherwise, re-
port to him the alleged conduct of Mattingly or Vassey, or
complain thereof, and that he never heard of such alleg-
ed occurrences until June 19, 1957, several months after
she had ceased to take subscriptions for magazines, when
her attorney, Frank Kimbrell, called over the telephone
and reported the matter. He further said that he had
qualified under the provisions of the Workmen's Com-
pensation Law.

The learned trial judge, on the question as to whether
the plaintiff was an agent or servant of Blaine held that
the evidence was sufficient to make a question for the
jury. But he pointed out that there was a total lack of
proof that the defendant knew anything about the al-
leged dangerous proclivities of Mattingly. For that rea-
son, he was of the opinion that there was no liability, and
therefore sustained the motion for a directed verdict for
the defendant, saying also that, if there was any liability,
the Workmen's Compensation Law affords the exclusive
remedy.

██ █ It is elemental that a trial court, in determining whether or not a directed verdict shall be given, must, as against the movant, accept as true all of the evidence for the adversary, together with the reasonable inferences therefrom. ██ █ Keeping that rule in mind, it is clear that the evidence in this case was sufficient to make an issue for the jury as to whether Vassey was an agent of the defendant. Kisner v. Jackson, 159 Miss. 424, 132 So. 90; Texas Company v. Mills, 171 Miss. 231, 156 So. 866; Wade v. Traxler Gravel Company, 232 Miss. 592, 100 So. 2d 103; and other cases too numerous to mention.

If this issue had been submitted to the jury, and the jury had found that Vassey was an agent of the defendant, the next question would have been for it to determine the extent and nature of his agency, that is, whether or not he was in fact a vice-principal. ██ █ In view of the fact that the jury could have found that he was a recognized manager of a crew, hired and fired his employees, and generally supervised them, it follows that the jury would have been warranted in concluding that Vassey was in fact a vice-principal of Blaine. Gwin v. Carter, 158 Miss. 196, 130 So. 597, and authorities there cited. See also Curry & Turner Construction Co., Inc. v. Bryan, 184 Miss. 44, 185 So. 256.

The plaintiff was employed by Vassey. Blaine testified that he did not employ Mattingly and did not know him. The record does not show by whom he was employed; but, as shown by the registration in Gonzales, Texas, on November 9, 1956, hereinabove mentioned, he was listed as a solicitor under crew manager L. J. Mosley. At any rate, it was shown that he was working in Vassey's crew. While there was evidence that he hired and fired several employees, it was not shown that he had any authority to do so. He drove a car for some of the employees in and about their work at times, but he also sold magazines just as they did. Thus he and the plaintiff, if employees of

the defendant, were such by reason of their employment by Vassey. Texas Company v. Mills, supra.

In Petroleum Oil Works v. Bailey, 124 Miss. 11, 86 So. 644, a sub-foreman and an employee were held to be fellow servants. In Great Southern Lumber Company v. Hamilton, 137 Miss. 55, 101 So. 787, the driver of the truck, utilized by the company to provide transportation of its workers to and from their work, was held to be a fellow servant of Hamilton, one of the workers who was riding on the truck at the time of and in the accident. In both of these cases liability was denied on the ground that the parties were fellow servants. Thus it must be concluded that the plaintiff and Mattingly were fellow servants.

The plaintiff testified that she did not know anything about the tendencies and proclivities of Vassey and Mattingly when she started to work. There was no proof that Blaine knew, or should have known, thereof. The episodes, when Mattingly slapped her because she did not obtain subscriptions, all occurred without the boundaries of the state as the crew moved from place to place. Since the plaintiff made no complaint about the matters, it was unlikely indeed that, from reputation, Mattingly's proclivities would become known to the defendant. The two alleged rapes occurred after work had ceased, and could hardly be said to be in furtherance of the master's business.

In Country Club of Jackson v. Turner, 192 Miss. 510, 4 So. 2d 718, where one employee assaulted another, on this question it was said: "Compliance with the duty to use reasonable care to maintain working conditions that are reasonably safe involves the duty to use such care in avoiding the employment or retention of a servant who is known to be dangerous or vicious where such propensities are calculated to expose co-employees to greater danger than the work necessarily entails. This principle no longer needs cited authority." The opinion, in its analysis of

the evidence, proceeded to state the issue succinctly as follows: "Let us therefore examine the testimony to ascertain whether (1) the servant Cobb was in fact of a vicious or dangerous character and (2) whether he was retained in service when such fact was or should have been known to appellant."

In McCarty v. Mitchell, 169 Miss. 82, 151 So. 567, another assault case, it was said: "In order for the appellee to recover, it must appear: (1) That the appellants employed, or retained in their service, the servant who committed the assault with knowledge, or its equivalent, that he did not possess the qualifications, mental, moral, and physical, which would enable him to perform his duties without exposing his fellow servants to greater danger than his work would necessarily entail; and (2) that the assault was committed under such circumstances as to make the appellants, because of the character of the servant who committed it and the knowledge of the appellants thereof, responsible therefor." See also Great Southern Lumber Company v. May, 138 Miss. 27, 102 So. 854; Hines v. Green, 125 Miss. 476, 87 So. 649; 56 C. J. S., Master and Servant, Secs. 316-7, p. 1076; 35 Am. Jur., Master and Servant, Sec. 347, pp. 774-5.

Besides, the plaintiff, after Mattingly slapped her, continued to work and did not report the matter or complain about it, and did not obtain a promise that the situation would be remedied. Obviously thereafter, she assumed this risk of her employment. Gulf & S. I. Railroad Company v. Hales, 140 Miss. 829, 105 So. 458; Louisville & N. R. Company v. Russell, 164 Miss. 529, 144 So. 478; Pearl River Valley Railroad Company v. Moody, 178 Miss. 1, 171 So. 769; Southern Pacific Company v. Seley, 152 U. S. 145, 14 S. Ct. 530, 38 L. Ed. 391; Seaboard Air Line Railway v. Horton, 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062; L. R. A. 1915C, p. 1; Ann. Cas. 1915 B 475; 56 C. J. S., Master and Servant, Sec. 393, pp. 1220-1.

■■ Under the proof in this case, manifestly the plaintiff failed to make out a case against Blaine insofar as the acts of Mattingly were concerned. A peremptory instruction, limited to those counts, would have been properly sustained.

■■ But the evidence in support of the seventeenth count, wherein it was charged that Vassey, in the City of Jackson, asked the plaintiff why she was not selling magazines and then slapped her, was sufficient to make an issue for the jury as to whether Vassey, if he slapped her, was engaged in the scope of his duties and in furtherance of Blaine's business. Therefore, it was error to give the peremptory instruction as to the whole case; and the cause must be, for that reason, reversed and remanded.

Several questions have been posed and must be answered for the benefit of the trial court at the next hearing of this cause.

■■ The court refused to permit the plaintiff to offer proof that Blaine had been convicted of the offense of assault and battery with the intent to kill. The objection thereto was based on the fact that the defendant had received a full pardon. The court was evidently influenced by two cases, Jones v. Board of Registrars, 56 Miss. 766, where a post master, convicted of embezzling federal funds, but was pardoned before the expiration of his term, sought to register as a qualified elector, and Ex Parte Crisler, 159 Miss. 247, 132 So. 103, in which a lawyer, convicted of embezzlement and disbarred, but was pardoned before the expiration of his term, sought to be reinstated as an attorney. The opinions in both of those cases used some broad language, but they did not settle the question here presented. 98 C. J. S., Witnesses, Sec. 508, p. 414, says: "A conviction may be used to impeach a witness even though he has been pardoned or his sentence has been commuted."

In 58 Am. Jur., Witnesses, Sec. 743, p. 402, the rule and its rationale are well stated as follows: ''The record of a conviction may be introduced in evidence to discredit a witness even though he may have been afterward fully and legally pardoned, or his sentence commuted, since neither fact can in any way change the characteristic in the witness which led him to commit the crime.'' See also Sec. 1693, Code of 1942, Recompiled.

Thus the court was in error in sustaining the objection. The inquiry should have been permitted.

 The plaintiff had stated in her testimony that she had been in the juvenile orphanage in Helena, Arkansas. The defendant sought to show why she was in the institution, and whether she was committed. The objection to the admission of this evidence was properly sustained by the court. The fourth paragraph of Sec. 7185.09, Code of 1942, Recompiled, is as follows: ''No adjudication upon the status of any child shall operate to impose any of the civil disabilities ordinarily imposed by conviction of adults, *nor shall any child be deemed a criminal by reason of such adjudication; nor shall such adjudication be deemed a conviction. The disposition of a child or any evidence given in the court in any proceedings concerning him shall not be admissible against the child in any case or proceeding in any other court,* nor shall such disposition or evidence be held against the child's record in any future school or college enrollment, nor operate to disqualify the child in any future civil service application or appointment.'' (Emphasis supplied.) The Arkansas law is of like effect. Sec. 45-205, Vol. 4, Arkansas Statutes, 1947 Annotation.

 Neither Vassey nor Mattingly were parties to this suit, nor did they testify as witnesses. The plaintiff offered in evidence a certified copy of an indictment of Mattingly by a grand jury in Jefferson County, Kentucky, at the June 1957 term of that court for an alleged rape in June 1956, and a judgment of the Justice of the

Peace Court of Hinds County, of date of August 14, 1957, in which Vassey pled guilty to drunkenness in a public place and was fined $5 and costs. If Mattingly had been a witness, he could not have been questioned about the indictment. Mars v. Hendon, 178 Miss. 157, 171 So. 880, 173 So. 286. ■■ ■■ A witness can be questioned only as to convictions. Smith v. State, 217 Miss. 123, 63 So. 2d 557; Sec. 1693, Code of 1942, Recompiled. In both instances, the matters came to the attention of courts after the plaintiffs period of emploment had ended, and by no stretch of the imagination, on that account, could they have afforded any basis upon which to say that the defendant should have known of the alleged proclivities of these men. The court properly excluded both documents.

Appellee also contends that, if there is any liability whatever against him, it must be admeasured by the provisions of the Workmen's Compensation Law; and the trial court so held.

But, following the decision of this Court in Laurel Daily Leader, Inc. v. James, 224 Miss. 654, 80 So. 2d 770, the Legislature enacted Chap. 344, Laws of 1956, which was approved and went into effect on April 6, 1956. That chapter amended Sec. 6998-02, Code of 1942, as amended by Sec. 1, Chap. 412, Laws of 1950, in part, as follows: ''(4) 'Employee' means any person, including a minor whether lawfully or unlawfully employed, in the service of an employer under any contract of hire or apprenticeship, written or oral, express or implied, provided that there *shall be excluded therefrom all independent contractors, and especially any individual performing service in, and at the time of, the sale of newspapers or magazines to ultimate consumers, under an arrangement under which the newspapers or magazines are to be sold by the individual at a fixed price, the individual's compensation being based on the retention of the excess of such price over the amount at which the newspapers or magazines are charged to the individual,*

whether or not the individual is guaranteed a minimum amount of compensation for such service, or is entitled to be credited with the unsold newspapers or magazines returned,''. (emphasis supplied.)

 From Blaine's explanation as to how the solicitors were paid, as heretofore set out in the statement of facts, it will be seen that the particular way and manner of operation in this business is excluded from the provisions of the Workmen's Compensation Law.

The court was so manifestly correct in its other rulings that a response thereto is unnecessary.

For the reasons stated, the cause must be, and is, reversed and remanded for a new trial.

Reversed and remanded.

*Roberds, P. J.,* and *Kyle, Holmes* and *Arrington, JJ.,* concur.

## ON APPELLEE'S MOTION TO CORRECT JUDGMENT

As stated in the opinion heretofore rendered, the declaration in this case consisted of 20 counts. Counts 1 to 16 inclusive and 19 and 20 related to acts committed by Mattingly, while counts 17 and 18 related to acts committed by George Faye Vassey, it being alleged in both instances that these men were agents and servants of the defendant Blaine. At the conclusion of the evidence for the plaintiff, the court sustained a directed verdict for the defendant.

For the reasons stated in the opinion, the court held that the defendant was not liable for the acts of Mattingly, and that ''a peremptory instruction, limited to those counts, would have been properly sustained''; but that the same was improperly granted as to the acts of Vassey, namely, counts 17 and 18.

The appellee has filed a motion to correct the judgment of this Court so as to affirm the judgment of the lower

court insofar as it applies to counts 1 through 16 and 19 and 20, and reverse and remand only as to counts 17 and 18, pointing out that the causes alleged in the several counts were separable.

Rule 12 of this Court provides as follows: "New Trial as to Part. In case a judgment is reversed, and a new trial granted, it shall be only a new trial of the question or questions with respect to which the verdict or decision is found to be wrong, if separable."

5B C. J. S., Appeal and Error, Section 1915, pp. 405-6, provides in part as follows: "Although piecemeal reversals are not favored, and an appellate court desiring to affirm in part and reverse in part should make such intention clear and distinct, where a judgment appealed from consists of distinct and independent matters, so that an erroneous portion thereof can be segregated from the parts that are correct, the court will not set aside the entire judgment, but only so much as is erroneous, leaving the residue undisturbed. Where the judgment is entire and indivisible, however, it cannot be reversed in part and affirmed in part, and if there is reversible error therein, it must be set aside in toto."

Section 1916, p. 407, of that text provides as follows: "Where plaintiff in his pleading sets up several counts or several causes of action and error is committed as to only part of them, the judgment, if capable of separation, should be affirmed in part and reversed in part. On the other hand, where the issue or count infected by error cannot be segregated, the judgment will be reversed in toto."

The several counts alleged complete and different causes of action and were susceptible of separation without injury or prejudice.

■■ ■ Consequently, the motion to correct is therefore sustained; and the judgment of the trial court is affirmed as to counts 1 through 16 and also as to 19 and

20, but the same is reversed and the cause is remanded as to counts 17 and 18, being the acts alleged to have been committed by Vassey.

Motion to correct judgment is sustained.

All Justices concur.