274 So.2d 678 (1973)
Lenzie ALLISON
v.
STATE of Mississippi.
No. 47019.
Supreme Court of Mississippi.
March 12, 1973.
Jerry T. Johnston, Brandon, for appellant.
A.F. Summer, Atty. Gen. by J.B. Garretty, Sp. Asst. Atty. Gen., Jackson, for appellee.

*679 ON PETITION FOR REHEARING
ROBERTSON, Justice:
The Petition for Rehearing is sustained, and the unpublished opinion heretofore rendered is withdrawn, and the following opinion substituted as the opinion of the Court.
Appellant, Lenzie Allison, was indicted, tried and convicted in the Circuit Court of Rankin County of assault and battery with intent to kill W.L. Bailey. Allison, with a 22 caliber rifle, shot Bailey in his left arm just above the wrist. He was sentenced to serve a term of 10 years in the Mississippi State Penitentiary.
Allison had been convicted several times of violating the prohibition laws by selling both bootleg and bonded whiskey in Rankin County, a dry county. On December 21, 1971, Allison was seen entering Yeagley's Package Store in Jackson, Hinds County, Mississippi, by a former employee of the Alcoholic Beverage Control Division. He entered empty-handed but came out of the package store with a full brown paper bag. This college student, who had worked for ABCD the summer before, telephoned this information to ABCD. A roadblock was set up by Bailey and Boyles, two agents of *680 the ABCD, on a public gravel road a short distance from Allison's home and grocery store in Rankin County.
The evidence was conflicting as to what happened thereafter. Allison claimed that he was acting in self-defense and his version was exactly opposite that of both Bailey and Boyles. The testimony of Bailey and Boyles was that they flagged down Allison as he approached in his car; that the portable blue light on the dashboard of their car was flashing; that Allison stopped his car abruptly and came out cursing and shouting obscenities at the two ABC officers. Bailey shouted: "Allison, you know we're ABC people, stop right there." Allison reached back into his car and came out with a 22 caliber automatic rifle.
The testimony of the agents was that Allison fired one shot at Bailey, who ran back to his car; Boyles ran for a mound of dirt on the side of the road. As Bailey reached his car, Allison shot again, hitting the windshield on the driver's side. Allison fired twice more into Bailey's car before Bailey returned his fire. In the meantime Allison fired at Boyles and pinned him down behind the mound of dirt.
As Bailey steadied his pistol with his left arm exposed on the left side of his car and fired through the space between the door and windshield, Allison shot him in the left arm above the wrist. Finally, after Allison had fired 16 times and emptied his rifle, he fled into the woods. All of this took place about 3:30 P.M. and Allison was not seen again until he turned himself in to the Rankin County Sheriff about 7:30 P.M.
Allison testified that the agents blocked the road, told him twice to get out of his car and when he came out with his rifle they started shooting. Allison said he ran behind his car and worked on his rifle which had jammed. He got his rifle fixed and when the agents started shooting again he started shooting. When he figured the agents were reloading, he ran into the woods.
The appellant contends that eight errors were committed by the trial court. We will discuss only those errors assigned which we think merit discussion.
The appellant contends that the indictment should have been quashed and the evidence suppressed because it was based on an illegal arrest. A careful review of the evidence has convinced us that there was probable cause for the ABC agents to stop the appellant and to search his car.
Section 10265-03, Mississippi Code of 1942 Annotated (Supp. 1972) provides:
"The officers, agents and representatives of the State Tax Commission and the Alcoholic Beverage Control Division thereof are authorized and directed to strictly enforce the prohibition laws throughout the State, except in those counties which have voted for the legalized sale of intoxicating liquor."
Rankin County is a dry county; a majority of the residents thereof has consistently voted against the legalized sale of intoxicating liquor. Appellant had been repeatedly convicted of violating the prohibition laws by selling both bootleg and bonded whiskey in Rankin County. The ABC Division had been informed by a trusted former employee, whom they knew to be reliable and credible, that he had personally seen the appellant enter a liquor package store empty-handed and had personally seen appellant depart therefrom with a brown bag full of purchases. Inasmuch as a liquor package store can sell only liquor, it was certainly reasonable and logical to assume that the brown bag contained alcoholic beverages. The agents did not attempt to stop him in Hinds County, which is wet, but attempted to stop him and to check his purchases on a public gravel road in Rankin County, which is dry. We think that there was probable cause for the agents' actions. See State v. Thrash, 257 So.2d 523 (Miss. 1972).
*681 But assuming arguendo that the agents' actions were not based on probable cause and were illegal, this still would not justify appellant in shooting at, and wounding, one of the agents with a deadly weapon.
This Court ruled in Wilkinson v. State, 143 Miss. 324, 108 So. 711 (1926):
"The courts generally hold that the right to resist an unlawful arrest is a phase of the right of self-defense; that as in other cases of self-defense the person sought to be arrested is justified in taking life only when he has reasonable ground to apprehend that he is in imminent danger of death or great bodily harm; that he is not justified in killing merely for the purpose of resisting an unlawful arrest or other restraint upon his liberty, where the only injury which could be reasonably apprehended is an unlawful detention for a short time or other injury short of death or great bodily harm; that the officer attempting to make an unlawful arrest is simply the aggressor in the difficulty, and stands in the shoes of any other aggressor in a like difficulty... . We prefer to align ourselves with the majority rule. We hold, therefore, that an officer attempting to make an unlawful arrest is not cut off from the right of self-defense; that he is only the aggressor in the difficulty and is in no worse attitude than any other aggressor under like facts and circumstances." 143 Miss. at 335-336, 108 So. at 712-713.
It was a question for the jury to decide whether or not the appellant, under the facts of this case, used excessive force.
In his second assignment of error appellant contends that the Court erred in granting the following instruction:
"The Court instructs the jury for the State that malice aforethought mentioned in the indictment may be assumed from the unlawful and deliberate use of a deadly weapon."
This instruction is on an abstract principle of law; no mention is made of the specific facts of this case. We said in Hydrick v. State, 246 Miss. 448, 150 So.2d 423 (1963):
"[I]nstructions in criminal cases embodying abstract principles of law should not be given to the jury." 246 Miss. at 451, 150 So.2d at 424.
Specific intent is an essential ingredient of the crime of assault and battery with intent to kill and murder, and in Hydrick we also said:
"[W]here a specific intent is the gist of the offense charged, the court should not instruct the jury on the presumptions of evidence which apply to the question of intent." 246 Miss. at 452, 150 So.2d at 425.
The eyewitnesses were ABCD Agents W.L. Bailey and Charles M. Boyles and the appellant Lenzie Allison. They all testified, and the two different versions of what occurred and all of the facts surrounding the shooting were in evidence. Again in Hydrick, supra, we said:
"This Court has from time to time reminded the Bench and Bar that when all of the facts are in evidence, an instruction for the State that malice will be implied from the deliberate use of a deadly weapon is not proper." 246 Miss. at 454, 150 So.2d at 426.
In Funches v. State, 246 Miss. 214, 148 So.2d 710 (1963), this Court said:
"When all the evidence is in, there is no presumption. Inferences may be drawn properly by the jury from the facts before it, without the trial court invading the jury's province with a direction as to `presumptions' or inferences." 246 Miss. at 217, 148 So.2d at 711-712.
We specifically condemned similar instructions in Blackwell v. State, 257 So.2d 855 (Miss. 1972), and Stewart v. State, 226 So.2d 911 (Miss. 1969).
*682 The granting of this instruction constituted reversible error.
Appellant next contends that:
"The Court erred in allowing the District Attorney to bring out certain altercations involving the defendant and other persons which did not result in defendant's conviction and which the District Attorney well knew and was advised by defense counsel were inadmissible and which inflamed and prejudiced the jury."
J.R. Edwards, Sheriff of Rankin County from 1968 through 1971, was called as a witness for the State. On cross-examination, in response to questions of defense counsel, Edwards testified that he had arrested Allison on numerous occasions and that he had never offered any resistance. Edwards then recalled to mind the occasion of one arrest and unsolicited went into some detail about this arrest. On redirect examination by the District Attorney, Edwards recalled still other facts about that particular arrest.
When Allison took the witness stand in his own defense, the District Attorney not only cross-examined him extensively about the arrest that former Sheriff Edwards mentioned, but also elicited from him details of at least four other assaults. The record is silent on whether Allison was ever charged or indicted for these assaults, much less convicted. Allison was questioned about an incident in which he killed a man, and also killed a baby with a stray shot. The name of the man killed was brought out on cross-examination and also Allison was required to answer that he was told that he killed a baby with a stray bullet.
The testimony elicited from Allison about unrelated offenses on which the record is silent as to indictment or conviction was highly prejudicial to the appellant and constituted fatal error.
Section 1693, Mississippi Code 1942 Annotated (1956), provides:
"Any witness may be examined touching his interest in the cause or his conviction of any crime, and his answers may be contradicted, and his interest or his conviction of a crime established by other evidence; and a witness shall not be excused from answering any question, material and relevant; unless the answer would expose him to criminal prosecution or penalty." (Emphasis added).
This Court has held many times that this examination must be limited to convictions and even then the details of the crime cannot be inquired into. Smith v. State, 217 Miss. 123, 63 So.2d 557 (1953); Statham v. Blaine, 234 Miss. 649, 107 So.2d 93; Motion to Correct Judgment Sustained, Miss., 108 So.2d 213 (1958), and Murray v. State, Miss., 266 So.2d 139 (1972).
The State contended that the door was opened when defense counsel in effect inquired into the reputation of the appellant for peace and violence, but even if the appellant's reputation for peace and violence was properly put in issue still the district attorney went too far afield in attempting to contradict the testimony as to the good reputation of the appellant for peace and violence and to bring out the details of crimes for which the appellant had not even been indicted.
In Kearney v. State, 68 Miss. 233, 8 So. 292 (1890), which was a murder case, the prosecution was allowed to ask a witness on cross-examination: "Do you know whether or not he [the defendant] has ever killed a man before?" Over objection the witness was allowed to answer: "I have heard that he had."
This Court, in reversing the conviction, said:
"One accused of crime may introduce evidence of his character such as would make it unlikely that he would commit *683 the crime with which he is charged, and, having thus put his character in issue, it may in turn be attacked by the state. But neither the accused nor the state can resort to particular facts to establish or refute the character thus put in issue. The reputation of the person, or at most what particular witnesses believe of him from his course of life, define the limits of the rule. One who puts his character in issue is supposed to be prepared to defend it by showing such habits as to generally impress the community or particular persons who knew him favorably. But he cannot be expected to be able to defend particular acts, nor is it just that, failing so to do, the burden of guilt in reference to a particular and disconnected transaction should be fixed upon him, and the motive or malice thus discovered imputed to the separate fact under examination." 68 Miss. at 238, 8 So. at 293.
Because of these prejudicial and fatal errors, the conviction and sentence are reversed and this cause remanded for a new trial.
Reversed and remanded.
All Justices concur.